566 S.W.2d 128 (1978)
ARKANSAS SAVINGS AND LOAN ASSOCIATION, Appellant,
v.
MACK TRUCKS OF ARKANSAS, INC., Armond L. Smith and Shirley G. Smith, his wife, Harris Cattle Company, Frank E. McGehee, Trustee for First Pyramid Life Insurance Company of America, and Truman O'Neil, Appellees.
No. 77-91.
Supreme Court of Arkansas, In Banc.
April 17, 1978.
Rehearing Denied June 19, 1978.
*129 House, Holmes & Jewell by Robert L. Robinson, Jr., H. B. Stubblefield, Little Rock, for appellant.
Hardin, Jesson & Dawson, Fort Smith, amicus curiae brief for Arkansas Savings & Loan League.
Wright, Lindsey & Jennings, Little Rock, amicus curiae brief for Central Arkansas Bank Clearing House Assoc.
Southern, Stewart, Gunter, Matthews & Alexander by Byron S. Southern, Laser, Sharp, Haley, Young & Boswell by John H. Haley, Catlett & Henderson by E. DeMatt Henderson, O. H. Storey, III, Little Rock, for appellees.
BILL PENIX, Special Justice.
On March 1, 1974, Mack Trucks of Arkansas, Inc., Armond Smith and Shirley G. Smith executed a note secured by a mortgage to Arkansas Savings and Loan Association of North Little Rock, Arkansas. The note was for $340,000.00, plus interest at the rate of nine percent per annum, and was for the purpose of a construction loan for one year.
Arkansas Savings was to and did make periodic disbursements out of the loan proceeds. On March 6, 1974, Arkansas Savings disbursed to itself $3,400.00. The $3,400.00 was noted by Arkansas Savings as a "service charge", but there was testimony that the charge was a "commitment fee". Arkansas Savings defined this as a charge for the lender binding itself ". . . absolutely and unconditionally to make said loan and advances as the construction of the improvement progresses". Further, the testimony was that while the loan required Arkansas Savings to tie up the funds committed to Mack Trucks and the Smiths for one year, the borrowers could obtain credit elsewhere and never draw the funds down.
*130 The agreement required Mack Trucks and the Smiths to pay taxes and hazard insurance. Arkansas Savings paid these charges totalling $3,429.65. The mortgage provided that these expenditures should be added to the principal sum of the debt.
Mack Trucks and the Smiths defaulted on the note. Arkansas Savings ultimately sued and the primary defense raised was usury. The Chancellor held that the $3,400.00 "service charge" or "commitment fee" was interest and that when added to the stipulated interest charged, the total was greater than the Arkansas constitutional limitation of ten percent during the one year term of the note. The Chancellor sustained the usury defense and dismissed the complaint except to the extent of the $3,429.65 paid by Arkansas Savings for taxes and hazard insurance which the Chancellor found to have been paid for all parties. Arkansas Savings was declared to have an equitable lien on the collateral of the mortgage to the extent of the $3,429.65. A second lien was awarded Harris Cattle Company in the principal amount of $39,911.54 on a mortgage which had been subordinated to the mortgage of Arkansas Savings. A third lien was found on the property in favor of First Pyramid Life Insurance Company in the principal amount of $23,416.66 for a later mortgage. A fourth lien was found on the property in favor of Truman O'Neil in the principal amount of $130,500.00 for a still later mortgage.
Arkansas Savings appealed the Chancellor's decree. Mack Trucks and the Smiths and Truman O'Neil cross appealed with regard to the Chancellor awarding the $3,429.65 first lien in favor of Arkansas Savings for taxes and insurance. Able briefs have been filed on behalf of Arkansas Savings, Mack Trucks and the Smiths, Harris Cattle Company and Truman O'Neil, as parties, and by Central Arkansas Bank Clearing House Association and Arkansas Savings and Loan League, as amicus curiae.

I
The primary issue in this case is whether the $3,400.00 "service charge" or "commitment fee" is interest. Interest at the legal maximum of ten percent for the year, March 1, 1974 to March 1, 1975, would have been $15,024.82, according to Arkansas Savings' computations. The contract called for interest at the rate of nine percent per annum and the parties stipulated that Arkansas Savings charged interest in the amount of $13,653.74, not counting the $3,400.00 fee. If the $3,400.00 were interest, then the total interest charged for the year was $17,053.94-$2,028.92 above ten percent.
This court previously has set forth two principles to determine when additional charges are interest. Sosebee v. Boswell, 242 Ark. 396, 414 S.W.2d 380 (1967). First, "any profit exacted by the lender must be treated as interest if it depends upon a contingency not within the control of the debtor". Second, "the moneylender cannot impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business". The first principle does not apply in this case since the one percent charge was made without regard to any contingency.
The second principle indicates the $3,400.00 charge is interest. The evidence is that a "commitment fee" is a common practice of savings and loan associations in the Little Rock area, purportedly for the association's willingness to set aside funds for the borrower. Arkansas Savings apparently charges one percent on all of its loans, construction, long-term, commercial and residential. This is no more than the collection from the borrower of a part of the lender's overhead or expense of doing business. If it is not payment of overhead expense, then the charge has no basis. Without any basis, the fee would be an unjustified service charge which should be included as interest under the note.
Although it is not in issue here, Arkansas Savings charged Mack Trucks and the Smiths a second one percent fee of $3,400.00 which was paid in cash on August 23, 1974. This apparently was for permanent financing which never was carried out. This *131 court is not ruling on whether the second $3,400.00 is interest.
The $3,400.00 Arkansas Savings disbursed itself March 6, 1974, whether it was a "service charge", "commitment fee", "points" or whatever, was no more than a discountthe taking of interest in advance. The Chancellor correctly held that the total of the interest charged to Mack Trucks and the Smiths made the loan usurious.
The collecting of interest by discounting and withholding money at the beginning of the term of a loan is a very old practice. In 1896 this court upheld a statute which allowed a ten percent initial discount for not more than one year. Bank of Newport v. Cook, 60 Ark. 288, 30 S.W. 35 (1895). The statute, as amended, now purports to allow discounting of a note to extend up to 36 months under certain circumstances. Ark.Stat.Ann. § 68-604 (Repl. 1957). The statute apparently has not been tested in recent times, but has been analyzed in articles. Note, Discounting of Commercial Paper, 7 Ark.L.Rev. 341 (1953); Mitchell, Usury in Arkansas, 26 Ark.L.Rev. 263 (1972).
The appellant questioned the ruling of the Chancellor as to the admissibility of evidence of custom. Any error in this regard was harmless. The evidence, if admitted, would not have changed the outcome of this case. Just because a practice is a matter of custom does not make it any less usurious.

II
Arkansas Savings urges that the Chancellor erred in refusing to hold that Mack Trucks and the Smiths were estopped from pleading usury and that Harris, First Pyramid and O'Neil lacked standing to raise the defense of usury. There is nothing in the record to indicate the Chancellor's decision was against the preponderance of the evidence. It is not necessary to consider whether Harris, First Pyramid or O'Neil had standing to raise the defense of usury since it adequately was raised by Mack Trucks and the Smiths.

Ill
Appellant contends that the "Brock Bill", 12 U.S.C. § 1830, kept the one percent charge from being usurious. The Brock Bill legalized loans of more than $25,000.00 for business or agriculture provided the interest rate did not exceed by more than five percent the discount rate on ninety day commercial paper in effect in Federal Reserve Banks. The Brock Bill did not become law until October 29, 1974, and applied only to loans made after its enactment. The loan here was made by Arkansas Savings March 1, 1974.

IV
There is no merit to Arkansas Savings' argument that a disclaimer provision in the mortgage purged the transaction from usury. The mortgage provision stated that Arkansas Savings did not intend to charge over ten percent and would make no claim to any interest over ten percent. The $3,400.00 charge was interest and was collected by Arkansas Savings. The disclaimer won't prevent the taint of usury from attaching. There is no suggestion of any mistake of fact in this case. Dupree v. Virgil Coss Mortgage Co., 167 Ark. 18, 267 S.W. 586 (1924).

V
Arkansas Savings urges that even if this court finds Arkansas Savings did charge a usurious rate of interest, a judgment imposing a general forfeiture of principal and interest would be a gross injustice. It has been pointed out that vast sums of money may be involved in similar transactions and it frequently is suggested that the Arkansas usury law is archaic and not suited to modern business practices. Over the past quarter of a century this court has handed down many "usury" decisions and the law on this subject is fairly well defined. If this constitutional provision is to be changed, it must be done by the electorate, not this court. We see no equitable reason to reverse the Chancellor, *132 reinstate the Arkansas Savings note and mortgage, and simply issue a caveat for the future.

VI
Although no other parties did, Arkansas Savings questioned the validity of the mortgage of Truman O'Neil. Since this decision eliminates any interest of Arkansas Savings in the property, except for a lien for insurance and taxes we need not reach the issue of the O'Neil mortgage.

* * * * * *

CrossAppeal
Mack Trucks and the Smiths correctly point out that where a loan contract is usurious, all indebtedness evidenced thereby is cancelled. The mortgage had a provision for Arkansas Savings to recover for taxes and insurance and the mortgage now is null and void. However, it was well within the powers of the Chancellor, even without the mortgage, to do equity and allow Arkansas Savings to recover for the taxes and insurance which were for the benefit of all of the parties and were paid to others.

* * * * * *
As this court said in O'Brien v. Atlas Finance Co., 223 Ark. 176, 264 S.W.2d 839 (1954), and repeated in Sosebee v. Boswell, 242 Ark. 396, 414 S.W.2d 380 (1967), "If this transaction is not usurious, then any transaction can be dressed up so as not to constitute usury although it would be clear that it was merely a scheme to evade the usury laws". Whether the $3,400.00 Arkansas Savings collected is labeled a service charge, commitment fee, takeout fee, origination fee, points, discount, or anything else, it is usury. The learned Chancellor is affirmed.
PAUL SULLINS, Special Justice, dissents.
HARRIS, Chief Justice, concurring on rehearing.
I agree that the petition for rehearing should be denied, and that the original opinion was correct. I do think, however, that since this is a rather important case, affecting, as it does, various lending agencies, the court should, on this rehearing, go into a little further detail on the question of loan commitments. I am cognizant of the fact that it is the policy of the court not to pass on matters that are not strictly and precisely an issue in the litigation (although this has been done on numerous occasions as indicated by the many opinions that contain dicta). However, this present decision has apparently been disturbing to many of our financial institutions, who seem to be in a quandary as to whether, or when, a commitment to make a loan can validly and legally be made. That there are differences in the circumstances in Arkansas Savings & Loan Association v. Mack Trucks of Arkansas, et al, supra, and other instances which have involved what I would call "a true commitment fee," is, at least to me, obvious, but I do not think I should express any view since my own particular ideas on the subject might not be in harmony with the majority of the court.
"One man's views do not a precedent make," and I certainly would not want any borrower or lender to rely, to any degree, on the opinion of one justice. Such a course would be, indeed, unwise.
But I emphasize that since hundreds of thousands of dollars are frequently involved in these loans, financial concerns, and lawyers who advise them, should have a clear precedent to follow in making their decisions.
To me, there are important questions in this field of loan-making, connected very closely with the case under discussion, which could have been clarified.[1]
NOTES
[1] For instance, as pointed out by the amicus curiae brief of Central Arkansas Bank Clearing House Association, there is no indication of this court's views where a lender contracts to make a loan available in the reasonably distant future at a set rate, and the customer pays a reasonable charge for the option to use such loan.