## ARKANSAS FARM PRODUCTS, INC. *v.* FORD MOTOR CREDIT COMPANY

CA 79-154                                    590 S.W. 2d 48

Opinion delivered October 31, 1979
Rehearing denied December 5, 1979
Released for publication December 5, 1979

*Dennis L. James,* of *Southern, Matthews & James,* for appellant.

*Griffin Smith* and *W. R. Nixon, Jr.,* for appellee.

Ernie E. Wright, Chief Judge. This appeal to the Arkansas Supreme Court was assigned to the Court of Appeals pursuant to Rule 29(3).

On April 22, 1977 appellant purchased a tractor from Walt Bennett Ford Company in Little Rock for $12,750.00, paying $2,750.00 down and executing a retail installment contract for the balance of the purchase price in the amount of $10,000.00, plus $1.00 for the cost of filing the lien with the Motor Vehicle Division, and including a finance charge of $1,074.76. The aggregate amount of $11,075.76 was scheduled to be paid in twenty-four consecutive monthly installments of $461.49 each on the 5th day of each month beginning June 5, 1977.

The contract required the buyer to maintain insurance against loss or damage to the property to protect the interest of the holder of the contract.

The contract was immediately assigned to the Appellee, Ford Motor Credit Company. Appellant made his monthly payments through March, 1978. At that time he had permitted the insurance on the vehicle to expire and was notified by letter dated March 13, 1978 he must furnish evidence of insurance or pay off the obligation. He failed to provide the insurance and appellee filed a replevin action on April 7, 1978. Appellant filed an answer and later an amended answer contending the contract should be declared void as usurious. The contention was based on the inclusion of the $1.00 lien registration fee in the principal amount of the contract and the allegation that a $50.00 charge was provided to be deducted from interest rebate in the event the buyer should pay the debt before maturity.

At trial it was not disputed that the seller incurred and paid $1.00 to register the lien with the Motor Vehicle Division. Appellant contends the court erred in failing to hold the $1.00 lien registration fee constituted interest in determining the issue of usury.

We hold the seller was permitted to include the $1.00 lien registration fee incurred in the face amount of the contract. In *Lockhart* v. *GMAC,* 252 Ark. 878, 481 S.W. 2d 350 (1972), involving an issue of usury the court said:

> Not every charge made to the borrower which benefits the lender will render a transaction usurious simply because the interest rate is a full 10% particularly if the charge is reasonable, is made in good faith and is reimbursement for a payment to a third person for something appropriate to establishing or protecting of the lender's security. For instance, we have recognized the propriety of such charges as property inspection fees, expense of an abstract of title, title examination fees, insurance premiums paid a third party, recording fees, expense of obtaining a release of a prior lien, and title insurance premiums. (Citing numerous cases.)

In *Brown* v. *Fretz,* 189 Ark. 411, 72 S.W. 2d 765 (1934), the court held a mortgage bearing the highest legal rate of interest was not usurious because the borrower was required

to pay for recording the mortgage and other incidental loan closing expenses.

Appellant contends the court erred in failing to hold the $50.00 acquistion fee mentioned in paragraph (14) of the contract was interest making the contract usurious.

The contract does not impose any unconditional requirements on the buyer to pay all or any part of the $50.00 acquistion fee. Under the terms of the contract the buyer is obligated to pay the debt in twenty-four equal consecutive monthly installments on the 5th day of each month beginning June 5, 1977. The payments are not scheduled to be paid on or before the 5th of each month. Under the contract the buyer is not required to pay any part of the $50.00 acquisition fee unless the buyer elects to pay the contract off before due. Then the $50.00 item or a part thereof determined by a formula based on total number of payments in relation to unpaid installments would be deducted from the unearned interest rebate, and the rebate would be computed under a formula called the ''sum of digits method.''

At the time of trial the contract had not been paid off so no part of the $50.00 item had been paid by appellant. In the suit appellant indicated his prior desire to pay the contract off, but contended he would have been required to pay all or part of the $50.00 item and that this made the contract usurious.

The appellee's evidence was that if appellant paid the balance of the contract as of the date of trial, January 15, 1978, the portion of the $50.00 acquisition fee that would have been deducted from the interest rebate would have been $1.67 under the rule of 78s, which is the sum of digits method, used to determine the rebate decimal. Appellee's testimony was that the $50.00 acquisition fee is not in the finance charges in the contract and does not affect the transaction in any way, unless the buyer elects to prepay the contract under item (14) of the contract. In this event in computing the interest rebate the buyer is chargeable with a portion of the $50.00 item determined by a decimal expressing the ratio of the number of payments remaining divided by

the number of original payments. The appellee's evidence was that this same practice and rebate calculation is used in all retail installment contracts handled by it in Arkansas.

We hold the provision in the installment contract for the deduction of a $50.00 penalty, or a fractional part thereof determined by multiplying the $50.00 by a decimal determined by dividing the number of unpaid payments by the total number of payments is not usurious. Under this circumstance the penalty charge is not interest, but is a reasonable and permissible charge for permitting the buyer to pay off the contract in advance of the due date. Obviously a lender in setting up its records for a finance or installment contract incurs some expense, and while it may well contemplate absorbing that expense when the contract runs for the full period, it is understandable it would expect the obligor under the contract to pay some penalty for prepayment. Otherwise, the finance company might often be in a position of incurring expense incident to the contract only to have it paid off in full in a matter of days.

In *Eldred* v. *Hart,* 87 Ark. 534, 113 S.W. 213 (1908), the court held that where the instrument evidencing an installment debt is free of usury if paid according to its terms, the transaction is not rendered usurious by the debtor voluntarily paying the debt in full before some of the installments matured, even though as a result the creditor receives a total sum amounting to more than the principal and maximum legal rate of interest.

In the present case the appellant elected not to carry the insurance the contract required him to carry for the protection of the security interest of the holder of the contract. The insurance, in the event of loss, would also inure to the benefit of appellant. Thus, it was the voluntary action of the appellant that brought the penalty clause concerning prepayment into prospective operation when appellee elected to replevy the vehicle upon breach of the insurance clause of the contract. When appellee sought to replevy, appellant raised the issue of usury.

The case does not fall within the ambit of *Arkansas*

*Savings & Loan Association* v. *Mack Trucks of Arkansas, Inc.*, 263 Ark. 264, 566 S.W. 2d 128 (1978), which held the charging of a fee, service charge, points, a discount or taking interest in advance would be added to the stipulated interest in determining whether usury was involved. The $3,400.00 loan commitment fee in that instance was taken by the lender out of the loan proceeds. No condition such as an election to pay the loan before maturity was involved.

Likewise, the cases of *Sosebee* v. *Boswell*, 242 Ark. 396, 414 S.W. 2d 380 (1967) and *Foster* v. *Universal C.I.T. Credit Corp.*, 231 Ark. 230, 330 S.W. 2d 288 (1959) involved monies exacted by the lender that did not involve a contingency within the control of the debtor.

Affirmed.

PENIX and NEWBERN, JJ., dissent.

MARIAN F. PENIX, Judge, dissenting. Under Rule 29 APPELLATE JURISDICTION OF THE COURT OF APPEALS

1. All cases heretofore appealable to the Supreme Court shall, from and after July 1, 1979, be appealed to the Supreme Court:

a. All cases involving the interpretation or construction of the Constitution of Arkansas; . . .

This case involves an interpretation of Article 19, Section 13 of the Constitution of the State of Arkansas. The Section 13 reads:

Usury — Legal rate. — All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; but when no rate of interest is agreed upon, the rate shall be six per centum per annum.

For the foregoing reasons it is my belief the case should be transferred to the Arkansas Supreme Court. Therefore, I respectfully dissent.

DAVID NEWBERN, Judge, dissenting. I agree with Judge Penix's observation that this case falls squarely within Rule 29(1)(a) which deprives us of jurisdiction to determine cases "involving the interpretation or construction of the Constitution of Arkansas."

It is particularly distressing to me that we refuse to certify this case to the Supreme Court in accordance with Rule 29(4)(a) because such an important question is presented and because of the obvious need for the Supreme Court to clarify and define the limits of *Arkansas Savings & Loan Association* v. *Mack Trucks of Arkansas, Inc.*, 263 Ark. 264, 566 S.W. 2d 128 (1978). Although Judge Penix did not find it necessary to say so in her opinion, she has authorized me to say she agrees with my conclusion that the $1.67 penalty or pre-payment fee charged by the appellee is usury when seen in the light of the *Mack Trucks Case*. Thus, with Judge Hays not participating, we reach a three to two decision on the merits of this important case which should not be before us.

Our conclusion that the *Mack Trucks Case* applies is based on the broad but clear statement there that "the moneylender cannot impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business." 263 Ark. at 267-268. We do not quarrel with the majority position that, unlike *Mack Trucks,* we have before us a charge which is somewhat within the borrower's control, but that addresses only one principle stated in that case and not the one we quote. In this case, an employee of Ford Motor Credit testified the prepayment charge was made to cover the cost to the lender of the money the lender has to borrow in order to extend credit to its customer. Thus, this business risk of a loss to the lender resulting from pre-payment is transferred to the borrower. This may be unlike the "commitment fee" dealt with in *Mack Trucks,* but I cannot see how it fails to constitute a part of overhead or the cost of doing business.

*Eldred* v. *Hart,* 87 Ark. 534, 113 S.W. 213 (1908), was decided seventy years before *Mack Trucks,* and although I can certainly distinguish it and the case before us from *Mack*

*Trucks,* I cannot do so in any way that reconciles them to its language to my satisfaction. I hope our Supreme Court will undertake the task, and I regret we have not taken our opportunity to reduce speculation whether they will do so.