Phillip W. JOHNSTON, Katherine Ann Johnston and Rudolph W. Johnston, Appellants,

v.

CITIZENS BANK & TRUST COMPANY OF FLIPPIN, ARKANSAS; A. Vernon Weaver, Administrator of the United States Small Business Administration, Appellees.

No. 80–1795.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1981.

Decided Sept. 23, 1981.

Patten, Brown & Leslie by Charles Darwin Davidson, P. A. (argued), Robert B. Leslie, Little Rock, Ark., for appellants.

A. Doug Chavis, Asst. U. S. Atty., Little Rock, Ark., for Small Business Admin.

Griffin Smith and W. R. Nixon, Jr. (argued), Little Rock, Ark., for Citizens Bank & Trust Co. of Flippin, appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

This appeal primarily presents the issue of whether a loan guaranty fee charged by a lender and later returned to the borrower constituted "interest" and was thus usurious under Arkansas law. Appellants also raise issues of possible bias on the part of the trial court and of error in failing to grant appellants' motions for voluntary dismissal or dismissal for lack of subject matter jurisdiction.

In order to consolidate debts incurred by their construction contracting business, Johnston Backhoe and Hauling, the Johnstons sought a Small Business Administration-guaranteed loan through the Citizens Bank & Trust Company of Flippin, Arkansas (Bank). The Bank, through its presi-

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minne-    sota, sitting by designation.

dent, Frank Burge, agreed to make a loan of $280,000, of which $265,000 was disbursed, and the SBA agreed to guarantee 75% of the amount of the loan. At the time, an SBA regulation required the lender to pay to the SBA a one-time loan guaranty fee of 1% of the total amount guaranteed by the SBA. This fee could not be charged to the borrower. Having made other SBA-guaranteed loans, Burge was well aware of this requirement, which was clearly stated in the Loan Guaranty Agreement and the Authorization and Loan Agreement executed by the SBA. Prior to the scheduled closing date of November 1, 1979, the SBA published a proposed regulation which would permit the loan guaranty fee to be charged to the borrower. The proposed regulation would have been retroactive to cover all loans approved after July 1, 1979. At closing, relying on the proposed regulation, Burge requested that the Johnstons pay the loan guaranty fee of $1,987.50. Burge claims that he informed the Johnstons that if the proposed regulation did not become effective, the fee would be immediately refunded to them. The Johnstons deny that any such agreement ever took place. On December 12, 1979, the regulation was adopted, but was made retroactive only to December 1, 1979. Burge then sent a cashier's check to the Johnstons, refunding the fee, but the Johnstons refused to cash the check.

The Johnstons then filed this action against both the Bank and the SBA, seeking a declaratory judgment that the loan guaranty fee was in effect "interest" under Arkansas law, thereby placing the interest charged in excess of the 10% constitutional limit and voiding the entire loan as usurious. The Bank filed a crossclaim against the SBA seeking a judgment of default and an award of damages to the extent of the guarantee. After the trial court denied the Johnstons' motion for a preliminary injunction which would have prevented the Bank from foreclosing on the collateral, the Johnstons sought to have the lawsuit moved to a state court forum by filing motions for voluntary dismissal and for dismissal due to lack of subject matter jurisdiction. These motions were denied. The Johnstons then

commenced a Chapter XI bankruptcy proceeding. Although the Johnstons sought a similar declaration in the Bankruptcy Court that the loan violated the usury laws, that court relaxed its stay order to permit the District Court to determine the usury issue. The Court ruled that the loan was not in violation of the usury provisions in Arkansas' Constitution. The Court, however, dismissed the crossclaim and a counterclaim that sought foreclosure of collateral, referring those claims back to the Bankruptcy Court for final disposition. We affirm.

Initially, we note that we find no problem in assuming jurisdiction over this appeal. The jurisdictional issue had been raised because the counterclaim and the crossclaim were not resolved but rather were transferred to the Bankruptcy Court. Generally, when all issues in a case are not resolved in the district court, that court must determine that "there is no just reason for delay" and expressly direct the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure before the court's order is an appealable final decision under 28 U.S.C. § 1291. *Scarrella v. Midwest Federal Savings and Loan*, 536 F.2d 1207, 1209 (8th Cir. 1976); *Lane v. Graves*, 518 F.2d 965 (8th Cir. 1975). This Circuit, however, has permitted appeals under section 1291 when the district court issues an order which "ends the litigation and leaves nothing for the court to do but execute the judgment." *Laclede Gas Co. v. Amoco Oil Co.*, 531 F.2d 942, 943 (8th Cir. 1976). *See also Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 516 F.2d 846, 849 (8th Cir. 1975).

It is not difficult to characterize the district court's order in the case now before us as a final decision for the purposes of section 1291. First, there are no issues that remain before the district court for determination. Jurisdiction over the counterclaim and the crossclaim is properly in the Bankruptcy Court, and consequently, the district court dismissed those claims without prejudice. Secondly, the usury claim against the Bank has been finally resolved at the district court level, leaving nothing for the court to do but execute the judgment.

Although there may have been some confusion concerning the appealability of the district court's order because the court "transferred" the two claims to the Bankruptcy Court, it is clear in the court's order for judgment that it *dismissed* the claims. In effect, the trial court dismissed those claims without prejudice, which is a final order for the purposes of section 1291. *Piel v. Harvard Interiors Manufacturing Co.*, 490 F.2d 1272 (8th Cir. 1974).

■ We turn first to the Johnstons' claim that the district court erred in determining that the loan guaranty fee charged and later reimbursed to the Johnstons was not interest and that the charge therefore did not make the loan void in violation of Arkansas' usury laws. Article 19, § 13, of the Arkansas Constitution, applicable to the parties at the time of closing, provides that

[a]ll contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; . . . .

It is readily apparent from decisions of the Arkansas Supreme Court that there are no firm rules governing the issue of whether a particular charge is really "interest." Rather, in making the determination, "the matter must be viewed as of the time [the note] was made in light of all attendant circumstances germane to the transaction." *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409, 414, *cert. denied*, *Boone v. McKee*, 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 171 (1978). *See also Hayes v. First National Bank of Memphis*, 256 Ark. 328, 507 S.W.2d 701, 704 (1974). In order to prove that a charge is usurious, the borrower must demonstrate that the lender intended to charge more than the 10% limit, *Bunn v. Weyerhaeuser Co.*, 598 S.W.2d 54, 56 (Ark.1980); *Textron, Inc. v. Whitener*, 249 Ark. 57, 458 S.W.2d 367 (1970), and that intent cannot be presumed when the opposite result can "fairly and reasonably be reached." *Key v. Worthen Bank & Trust Co.*, 260 Ark. 725, 543 S.W.2d 496, 498 (1976).

■ Although there may be some confusion over what is the Arkansas rule governing the "interest" determination, one principle does emerge with clarity from the Arkansas decision. That principle is that if a fee is profit for the bank, or overhead expenses, or general costs of doing business, then the fee is characterized as "interest" for the purposes of the usury determination. If the fee is appropriately paid by the lender to a third person or collected in good faith for the purpose of being reimbursed to a third person and not "pocketed" by the lender, then the fee cannot be characterized as "interest." *See Arkansas Savings & Loan Ass'n v. Mack Trucks*, 263 Ark. 264, 566 S.W.2d 128, 130 (1978); *Lockhart v. G.M.A.C.*, 252 Ark. 878, 481 S.W.2d 350, 351 (1972); *Harris v. Guaranty Financial Corp.*, 244 Ark. 218, 424 S.W.2d 355, 357–58 (1968). The purpose of the fee and its recipient are critical.

*Lockhart* involved a fee charged to a borrower that is similar to the fee in the matter now before us. The borrower paid an insurance premium for the lender's benefit to secure an automobile purchased under a 10% installment loan. The court determined that the fee was not interest, finding persuasive the fact that the charge was (1) reasonable, (2) made in good faith as reimbursement for a third party, and (3) appropriate to protecting the lender's security. *Lockhart*, 481 S.W.2d at 351. *Mack Trucks* also involved a similar charge. That determination involved a 1% commitment fee or service fee charged by a lender who was making a loan for advances on construction costs. The court found that the fee was interest because it was essentially the lender's cost of doing business and the money was kept by the lender. *Mack Trucks*, 566 S.W.2d at 130.

■ The district court correctly applied the law and found that, like in *Lockhart*, the guaranty fee charge was reasonable, made in good faith as reimbursement for or payment to a third party and was appropriate to protecting the lender's security. Considerable evidence supports that finding and thus it cannot be disturbed on appeal. The proposed SBA regulation permitting the guaranty fee charge was published prior to the closing date, with an effective date of July 1, 1979, so it was reasonable for

Burge to believe that he could lawfully charge the fee to the borrower. The charge was made in good faith; Burge informed the SBA that he was charging the guaranty fee in reliance on the proposed change. The reimbursement was prompt when the substance of the final resolution was altered. The fee was appropriate for protecting the Bank's security, in this case the SBA guarantee.

Most important, however, is the fact that the loan guaranty fee was collected for the purpose of reimbursement to the SBA. Such a charge, under Arkansas law, cannot be found to be interest merely disguised as a service fee. The charge was reimbursed to the SBA and promptly returned to the Johnstons when the proposed regulation was changed. Had the Bank not returned the money to the Johnstons when the regulation was changed, a different result may have ensued. And even though it is the circumstances at the time of closing that must be considered, later events are often relevant in determining how to characterize a particular fee. *Parks v. E. N. Beard Hardwood Lumber*, 263 Ark. 501, 565 S.W.2d 615, 616 (1978), cited in *Bunn*, 598 S.W.2d at 56–7.

The Johnstons rely primarily on *Mack Trucks*. In that case, however, the lender pocketed the fee that was charged in excess of the 10% interest. The fee was a profit to the lender, a recoupment of the firm's cost of doing business. In the matter now before us, the fee went directly to the SBA. The Johnstons argue that because the Bank was obligated to pay the fee and not charge it to the borrower, the charge became a profit to the Bank, a cost of its doing business. That argument, however, completely ignores the circumstances under which the guaranty fee was charged and later returned. At no point was the charge ever a profit to the Bank. Once it became clear that the charge was improper, the Bank returned the money to the Johnstons. At no time was the SBA loan guaranty fee ever the kind of cloak covering a usury violation that Arkansas law prohibits.

■ Alternatively, we find that the district court's finding of fact that the parties made an agreement at closing that the fee would be returned if the regulation was not adopted is not clearly erroneous. *See* Fed. Rule Civ.Pro. 52(a). When parties mutually agree at closing that a particular charge is conditional on a future event, and the fee is returned when the condition is not fulfilled, the fee cannot be found in violation of the Arkansas usury laws. *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409, 414, *cert. denied, Boone v. McKee*, 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 171 (1978). Although the Johnstons deny the existence of any such agreement, the trial court found that the evidence supported the agreement. Burge testified that the agreement was made, and the fee was refunded promptly after the regulation was adopted. The finding must be affirmed.

■ The remaining claims raised by the Johnstons have little merit and can be disposed of quickly. The Johnstons claim that the district court judge erred by not recusing himself on his own motions under 28 U.S.C. § 455. During the court hearing on the Johnstons' preliminary injunction motion, the judge apparently remarked that the Arkansas usury law was "harsh" and amounted to a "gift." For this reason, the Johnstons believe the judge exhibited prejudice and bias toward them and should have recused himself. No affidavit to this effect, pursuant to 28 U.S.C. § 144, was ever filed. The grounds asserted by the Johnstons for recusal are clearly insufficient. The judge merely expressed a viewpoint concerning a legal issue, *see United States v. Conforte*, 624 F.2d 869, 882 (9th Cir. 1980), and nothing from an extrajudicial source occurred which could taint his viewpoint. *See United States v. Azhocar*, 581 F.2d 735, 739 (9th Cir. 1978). Furthermore, "a record which reflects an appropriate ground for a trial court's observations refutes any claim of personal bias." *Securities and Exchange Commission v. Bartlett*, 422 F.2d 475, 481 (8th Cir. 1970). We think that a reasonable person knowing all the relevant facts would not question the impartiality of the trial judge in this case. *See Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980).

The Johnstons also seek review of their various dismissal motions. First, they sought dismissal due to lack of subject matter jurisdiction because the presence of the SBA, the reason for Federal jurisdiction, was merely "proper" and not "necessary." We find this argument devoid of legal merit. The Johnstons made the SBA a party to the action and asserted a claim against it. That action made jurisdiction in the Federal court proper. 15 U.S.C. § 634(b)(1); 28 U.S.C. § 1331. A possible failure to state a claim upon which relief can be granted does not deprive the district court of Federal jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). A motion for voluntary dismissal is discretionary with the trial court after an answer is filed unless all parties sign a stipulation. Fed.Rules Civ.Pro. 41(a)(1), (2). The trial court did not, in this instance, abuse its discretion in denying the motion.

The judgment of the district court is affirmed.