James MOORE, Appellant,

v.

McGRAW EDISON COMPANY, a Maryland corporation, Appellee.

Edward SOMMERFELD, Appellant,

v.

McGRAW EDISON COMPANY, a Maryland corporation, Appellee.

Chester THOMPSON, Appellant,

v.

McGRAW EDISON COMPANY, a Maryland corporation, Appellee.

Claire DWINNELL, Appellant,

v.

McGRAW EDISON COMPANY, a Maryland corporation, Appellee.

No. 85–5309.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1986.

Decided Nov. 3, 1986.

Rehearing and Rehearing En Banc Denied Jan. 5, 1987.

Stewart R. Perry, Wayzata, Minn., for appellant.

Richard L. Evans, Minneapolis, Minn., for appellee.

* The HONORABLE WILLIAM C. HANSON, Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

The Court has before it numerous allegations of error. Plaintiffs appeal the decision of the Magistrate denying their motion for a new trial in their suits alleging age discrimination, and directing a verdict for the defendant on their claims of duress, fraud, and breach of contract. For the reasons stated below, we affirm the district court.[1]

## I. BACKGROUND.

The appellants, four long-time employees, were laid off in 1982 during a reduction in force at Electric Machinery Company, a division of McGraw Edison Company (hereinafter "E–M"). From 1978 to 1984 E–M had experienced a 60 percent drop in business. In response to this, E–M had reduced its salaried workers from a high in 1979 of 450 to a work force of only 200 in 1982. During 1982 E–M reduced its work force by an additional 50 salaried workers. E–M department supervisors selected the people to be laid off, with the general manager having the authority to overrule their decisions.

When fired, James Moore was 59 years old and had worked at E–M for almost 40 years. He was discharged on May 28, 1982 with one hour's notice along with 23 other salaried employees. From 1959 to 1982 he had been supervisor of testing and inspection for controls, devices which controlled the speed and output of the rotating equipment at E–M. In 1980, E–M sold its controls business and Moore was laid off. Shortly thereafter, he was rehired in the service department. From 1980 until his termination in 1982, Moore was the least senior member of the service department. In May 1982 Dan Gospodarski, the supervisor of service engineers, decided that be-

1. The HONORABLE PATRICK J. McNULTY, United States Magistrate for the District of Minnesota, sitting as a district judge pursuant to 28 U.S.C. § 636(c)(1).

cause Moore's experience was in controls and not rotating equipment and because control work was a smaller part of their business, Moore would have to be let go. Other much younger men who worked in the field service area were retained. Moore was not considered for a field service job because his limited experience in rotating equipment would have required a training period in that area. Gospodarski testified that age was not a factor in his decision and that he never told Moore it was a factor. Moore testified Gospodarski told him that age was a factor and that when layoffs had to be made it was probably better to go after older people who were making more money and who had more fringe benefits.

Appellant Edward Sommerfeld was one of 29 salaried employees terminated on November 29, 1982. Sommerfeld was 59 years of age and had worked for E–M for 37 years. He was fired on one-hour's notice. Sommerfeld was an "expediter" on the assembly floor at E–M's Central Avenue plant. Sommerfeld had moved to that position shortly before his termination to assist a man roughly his same age. Prior to the move, Sommerfeld was expediter in the press room at E–M's University Avenue plant. In early 1982 E–M closed the University Avenue plant. Richard Schultz, who was in charge of manufacturing for E–M in 1982, testified that age was not a factor in eliminating Sommerfeld's position. Younger employees who were retained were office workers in the inventory and stockroom areas. Sommerfeld was familiar with their jobs, but did not claim to be qualified to do their jobs, nor did he state that he was qualified to use the stockroom computer system.

On the day of his termination, Sommerfeld met with Eric Leone, supervisor of the assembly floor. Leone had asked Sommerfeld to sign a Termination Agreement. Sommerfeld refused. He was then told he would not receive his severance check unless he signed the Agreement. Sommerfeld then signed the Agreement releasing E–M from any claims. His severance pay was approximately $11,000.

Appellant Chester Thompson was also terminated on November 29, 1982. Thompson was 57 years old and had been with the company 31 years. He was fired on one hour's notice. During his years at E–M, he had worked as a quality control supervisor in the machine shop, welding shop, two different winding departments, various assembly floors, and all the test floors. At the time he was fired he was the supervisor of the B test floor. In November 1982 E–M decided to consolidate the supervisory positions of the B shop and eliminate two of the four supervisors then in testing and assembly. There would be four times as many people to be supervised in the combined areas as were in the original test area. Eric Leone, Thompson's supervisor, testified that age was not factor in making the decision to lay off Thompson. Rather, he testified that Thompson was not as qualified as others to supervise in the coils area and that Thompson would be unable to handle the winding area as a supervisor.

Thompson signed a Termination Agreement releasing E–M from liability. At the time he signed the Agreement, his only reservation concerned future medical expenses he would incur. When told that he could continue his health insurance, Thompson signed the release. He received approximately $15,000 in severance pay.

Appellant Claire Dwinnell was also laid off on November 29, 1982. She was 57 years old and had worked at E–M for 31 years. Dwinnell was supervisor of the payroll department which consisted of three employees. Her primary responsibilities were with the salary payroll. Salary payroll had once been a full-time job, but the duties had been substantially decreased when the system was automated in January 1981. At that time her duties changed so that she helped out on wage payroll as well. The other two payroll employees had worked on wage payroll exclusively, thus having more experience than Dwinnell in that area. On November 29, 1982 Dwinnell's supervisor, John Panning, then manager of accounting for E–M, decided to

terminate Dwinnell and one other payroll employee, leaving only one person in the department. He based his decision on his close knowledge of the payroll function, the amount of work to do, and the declining payroll as a result of work force reductions. The retained payroll employee was chosen to remain because he had detailed knowledge of the union contract and bumping rights of workers, an essential part of the job during this period of so many layoffs. Dwinnell did not have any experience working with union contracts. After her layoff, some of her duties were assumed by a younger woman who had been a receptionist.

When she was terminated, Dwinnell signed a Termination Agreement, releasing E–M from liability. She received severance pay of approximately $6,000.

At the time of the dismissal of these employees, E–M had a written severance policy which stated that severance pay "may be payable" if termination was not "for cause." The written policies of the company contained no provision for mandatory severance pay as a matter of right.

At trial the appellants' expert witness testified that his analysis strongly suggested age discrimination in the selection of employees to be terminated in 1982 and 1983. He admitted, however, that his analysis would not be able to refute a nondiscriminatory reason for the terminations of each of the appellants. His analysis did not include any of the terminations which took place prior to 1982.

The trial court awarded E–M a directed verdict on the duress, fraud, and breach of contract claims. The jury found that the Termination Agreements signed by Dwinnell and Thompson barred their recovery, and that Moore and Sommerfeld had not been discriminated against because of their age. This appeal followed.

## II. MOTION FOR NEW TRIAL.

### A. *Sufficiency of the Evidence.*

■ Appellants assert that the trial court erred in denying their motion for a new trial because the verdicts were not supported by the evidence. Viewing the evidence in this case as a whole, we conclude that reasonable ·jurors could reach the verdicts that they did. In the case of Dwinnell and Thompson, the jury found that they had released their claims against E–M. Dwinnell and Thompson admitted they had signed the Agreements without protest; however, they claim they signed the releases under duress or fraud. We believe it was reasonable for the jury to conclude that Dwinnell and Thompson had released their claims against E–M.

■ Even assuming arguendo that the releases were invalid, we would conclude there was insufficient evidence of age discrimination. The Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1982), states that it shall not be unlawful to take any otherwise prohibited actions "where the differentiation is based on reasonable factors other than age [RFOTA] * * *." 29 U.S.C. § 623(f)(1) (1982). In the business cutback cases in which the RFOTA defense has succeeded, there has typically been an additional showing that the reduction was made according to evaluation procedures based on performance, and was designed to retain the employees best able to perform the available work remaining. *See Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 961 (8th Cir.1978); *Marshall v. Roberts Dairy Co.*, 572 F.2d 1271, 1272–73 (8th Cir.1978). On the other hand, when the objective facts show no deficiency in performance, the RFOTA defense based on job performance may fail. *See Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 692–93 (8th Cir.1983). But, convincing evidence of poor job performance can support a defense of RFOTA. *See Scharnhorst v. Independent School District No. 710*, 686 F.2d 637, 640 (8th Cir.1982), *cert. denied*, 462 U.S. 1109, 103 S.Ct. 2459, 77 L.Ed.2d 1337 (1983). Furthermore, the outright elimination of an employee's position pursuant to a company policy having nothing whatever to do with age is a satisfactory RFOTA defense. *Marshall*, 572 F.2d at 1272; *Moses v. Fal-*

*staff Brewing Corp.*, 550 F.2d 1113, 1114 (8th Cir.1977).

The only evidence of age discrimination presented by the appellants was a claim by Moore that his supervisor, Gospodarski, stated he looked at age in deciding whom to terminate. Moore's testimony was directly refuted by Gospodarski. Moreover, E–M presented legitimate, non-discriminatory reasons for the decisions to retain younger employees. In the case of Moore, he was least senior in his department and had less experience on rotating equipment than the younger men that were kept. In Thompson's case, his supervisor believed that he was a less effective supervisor in the combined test/assembly floor operation than the men that were kept. In the payroll department, an employee younger than Dwinnell was kept to handle union payroll with which Dwinnell was unfamiliar. In addition, a younger person assumed some of her duties in addition to the duties she was unable or unwilling to perform. Because Sommerfeld's position was eliminated, he could present no evidence that age was a factor in his termination.

Moore, Thompson, and Sommerfeld assert that they were qualified to assume positions outside of their departments and that these positions had been filled by younger employees. It would appear, however, that E–M rebutted the appellants' assertions. Sommerfled said that he was "familiar" with the areas of responsibilities of two younger employees, but admitted on cross-examination that these employees worked in the office where he had never worked and that he was not fully qualified to run the computer in the stockroom. Although Thompson testified he wanted to move to the coils or winding areas where younger employees were supervisors, his supervisor testified that he was unfamiliar with the technical changes in the coils area and not able to be a supervisor in the winding area. Although Moore testified that he wanted to be a field service engineer, Gospodarski testified that he did not consider Moore suited for the field service position, and that Moore did not have sufficient rotating equipment experience.

■ Thompson and Dwinnell asserted that they had conversations with their supervisors in which age was mentioned. In both cases, however, Thompson and Dwinnell raised the issue of age. The supervisors do not remember the conversations. The jury was entitled to assess the credibility of the evidence. We can see no reason to disturb the jury's decision that Dwinnell and Thompson released their claims against E–M. In any case, we believe that E–M presented substantial RFOTA evidence with regard to these employees.

■ Finally, the appellants assert that they presented substantial evidence of age discrimination by way of the expert testimony of Dr. Donald Berry, who testified that the chances were two in one thousand that age was not a factor in the terminations. Statistical evidence, while relevant to show motive, intent, or purpose, is not determinative of an employer's reason for the action taken against an individual grievant. *King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir.1975); *see also Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977). Especially in the context of age discrimination cases, in which there are factors tending to negate the probative value of such evidence, statistics might not be reliable to indicate an employer's compliance with the Act's proscriptions. 3 A. Larson & L. Larson, *Employment Discrimination* § 102.44, at 21–313 (1986). In this case, the expert's testimony was based on only the 1982 and 1983 terminations, in spite of the fact that E–M had terminated hundreds of employees in the preceding three years. Even if there were reason to believe that the expert's opinion had been enough to establish a prima facie case of discrimination based on age, E–M presented reasonable factors other than age for the terminations to rebut this testimony.

As a result, we believe that E–M presented sufficient reasonable factors other than age so that the jury could conclude that age was not a factor in the terminations; therefore, we affirm the trial court's denial

of the motion for a new trial based on the sufficiency of the evidence.

### B. *Misconduct by the Trial Court.*

■ Appellants assert that the trial court exhibited prejudice against them, resulting in a violation of due process. Appellants complain of the trial court's evidentiary rulings, questioning of witnesses, statements of counsel, exclusion of evidence, jury instructions, and procedural decisions. 28 U.S.C. § 144 requires recusal only when the trial court's bias is extrajudicial. The alleged bias and prejudice to be disqualifying must also result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Disqualification is not required because the judge has definite views as to the law of a particular case. *See Johnston v. Citizens Bank & Trust Co., etc.,* 659 F.2d 865, 869 (8th Cir. 1981). Antipathy to an attorney is insufficient grounds for disqualification of a judge because it is not indicative of extrajudicial bias against a party. *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1398 (8th Cir.1983). Because appellants have failed to show extrajudicial bias on the part of the trial court, we must deny their motion for a new trial on this basis.

■ Assuming that 28 U.S.C. § 144 is not applicable to this case, we do not believe that any of the appellants' specific allegations of bias have merit. Appellants claim that the court harbored a bias against the law stated in *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093 (8th Cir. 1982). In its order denying the motion for new trial, the district court stated that its alleged "excoriation" of the *Gibson* opinion was a blatant misstatement and bordered on contempt, and that the court's dissatisfaction was with "counsel's repeated citation of *Gibson* for propositions foreign to the holding, dicta, and rationale of the opinion." Order at 11–12. We find nothing in the record which would suggest that the district court did anything but follow the law as set out in *Gibson.* Appellants also claim that the court erred in giving an instruction which is contrary to the rule set out in *Gibson.* The instruction stated that

> [y]ou will note that the Act does not require that advanced age, substantial length of service or seniority entitled employees to special favorable consideration, except as I have stated the statute to provide.

This instruction is taken almost verbatim from *Manville v. ACTION,* No. 79–1103 (D.D.C. August 13, 1980). We do not believe that the court committed error in including this instruction in order to dispel the notion that the broad experience of the appellants would give them bumping rights throughout the plant.

■ Appellants also maintain that the court erred in failing to include in its charge Plaintiffs' Proposed Instruction A–II, Third Set, an instruction on damages patterned after *Gibson.* We have considered the appellants' argument and conclude that the district court has committed no error. Even if the court erred, it was not prejudicial to the appellants because the jury did not reach the damages issue.

■ Finally, appellants assert error in the district court's rejection of their testimony as to their qualifications for other jobs as showing disapproval of the *Gibson* opinion. The district court found this evidence inadmissible as irrelevant in determining whether the appellants were terminated because of their age. Once again, we find no error in the trial court's finding inadmissible this opinion evidence, nor do we believe the court's ruling was inconsistent with *Gibson.*

As to the remaining claims of bias on the part of the trial court, we conclude after carefully examining the record before us that the trial court committed no error and that if any error was committed it was not prejudicial to the appellants. We affirm the district court's denial of a new trial on this ground.

## C. *Termination Agreements.*

 Appellants maintain that the district court erred in allowing the defendant to amend its answer to assert the termination agreements as defenses. Three months before trial E–M moved for summary judgment based on the releases. The district court denied the motion. It is apparent that the appellants were on notice that the releases would be relied upon by E–M. Moreover, the raising of the releases in the complaints and the denial of their fraudulent nature by E–M placed the releases in issue. We conclude that there was no prejudice to the appellants in allowing E–M to amend its answer. F.R.Civ.P. 15(a).

 Appellants further assert that the termination agreements were fraudulent and that the trial court erroneously submitted them to the jury. Their claim rests solely on the fact that E–M's severance policy did not contain the word "discretionary," as referred to in the Termination Agreements. The severance policy states that a "severance may be payable." We therefore conclude that the question of whether the severance pay was in fact discretionary was properly put to and decided by the jury.

Appellants Thompson and Dwinnell claim they could not release their ADEA claims. In support of their position, they point to *Runyan v. National Cash Register*, 759 F.2d 1253 (6th Cir.1985), *vacated*, 787 F.2d 1039 (6th Cir.1986) (en banc). Relying on cases which hold that FLSA rights cannot be privately waived, the Sixth Circuit originally held that ADEA rights cannot be waived by a private, unsupervised release. 759 F.2d at 1258. However, the Sixth Circuit subsequently vacated the original panel's decision, and decided en banc that when there is a fact dispute over intent and motivation, an ADEA claim can be waived. 787 F.2d at 1044–46 (en banc).

 The issue in the instant case is whether E–M's discharge of the appellants was in violation of the provisions of the ADEA. This is a fact dispute involving intent and motivation. Consistent with *Runyan*, we believe that fact disputes of this nature should be compromised and settled by the plaintiffs accepting a payment of damages in a sum less than demanded and the defendant paying damages in a sum in excess of that offered. We do not believe that a settlement of a fact dispute in this fashion compromises the policies of the ADEA, in the absence of fraud, deceit, or unconscionable overreaching, and is in accordance with encouraging amicable arm's length settlement of private disputes.

 In addition, Federal Rule of Civil Procedure 51 precludes a claim of error based on improper instructions to the jury in the absence of an objection to the instruction prior to the time the jury retires to deliberate. Appellants' counsel proffered an instruction with regard to waiver of an ADEA claim after the jury had been charged, but before they had begun to deliberate. Counsel did not provide the court below with either authority for the proposition, nor a clear explanation of the theory upon which the proffered instruction was based. As a result, even if there were reason to believe that appellants Dwinnell and Thompson could not have released their ADEA claims, we conclude that this argument was improperly preserved for appeal. Therefore, the district court did not err in denying the appellants' proffered instruction with regard to the waiver of the ADEA claim.

Finding no error in the district court's rulings on the Termination Agreements, we affirm its denial of a new trial on this ground.

## D. *The Trial Court's Response to the Jury Inquiry.*

 During deliberations the jury asked the court, "Is there a law that a company must have the final check and vacation owed within 24 hours of termination?" (Tr. 624). After consulting with counsel, who were not in the courthouse, the court decided to read Minn.Stat. § 181.-13 to the jury. The court also provided a clarifying remark stating an employer

must pay wages due within 24 hours of an employee's demand, not 24 hours from termination as presumed in the jury's question. The foreperson of the jury told the court that the question related to whether the appellants had signed the release under duress. The court then reread the instruction on duress. We conclude that the court's reading of the Minnesota statute and rereading of the instruction on duress was neither error nor prejudicial to the appellants and therefore would affirm the district court's denial of the motion for new trial on this ground.

## III. STATE LAW CLAIMS.

### A. *Fraud and Duress.*

■ Appellants assert that the district court erred in directing a verdict against their fraud claims. The elements of fraud in Minnesota are a false statement by the defendant, a communication of the false statement to the plaintiff, acts by the plaintiff in reasonable reliance on the false statement, and injury resulting from that reliance. *Hanson v. Ford Motor Co.,* 278 F.2d 586, 591 (8th Cir.1960). Appellants now assert the statement in the termination agreement that severance pay was "discretionary" was false and that they signed the agreement in reliance thereon. They argued that they had lost wages, benefits, and attorneys' fees as damages for their fraud claim. We would have to agree with the district court that the damages they allege arose from their terminations and not from signing the Terminations Agreements. Moreover, the appellants present insufficient evidence to substantiate their claims of fraud. In fact, the severance policy states that "severance may be payable if the termination is not for cause." We therefore affirm the district court's directed verdict on this ground.

Appellants further allege that they were coerced into signing the Termination Agreements under duress. With regard to appellants Thompson and Dwinnell, however, there is no evidence of duress and therefore it would not have been proper to submit this claim to the jury. With regard

to Sommerfeld, the jury concluded when it considered his ADEA claim that the Termination Agreement he signed was void because it was signed under duress. As with the fraud claim discussed above, however, any damages which resulted from the duress inflicted by E–M resulted from his termination, not from his signing the releases. We therefore conclude that the district court properly directed a verdict against the appellants' state law duress claims.

### B. *Breach of Contract.*

■ Appellants assert that the district court erred in directing a verdict against them on their state law claims for breach of the implied covenant of good faith. Appellants argued that the court should imply into the at will employment doctrine a covenant that all laws will be obeyed upon termination. In Minnesota, a covenant of good faith is not implied as a matter of law in all employment relationships, but the parties can create such a covenant expressly or by their actions. *Eklund v. Vincent Brass and Aluminum Co.,* 351 N.W.2d 371 (Minn.App.1984). The appellants admitted before the trial court that they were arguing a position which has not been recognized in Minnesota. (Tr. 395–96). On appeal appellants assert that *Eklund* states that plaintiffs must be allowed to present evidence that a covenant of good faith was expressly or impliedly contained in their contracts. Appellants have had that opportunity before the trial court below. We therefore believe that the district court was correct in directing a verdict against the appellants on their breach of contract claims.

■ Appellants also argue that E–M failed to inform them of their right to appeal their terminations, thus constituting breach of contract. E–M's personnel manager testified that if a terminated employee was dissatisfied, the employee could appeal to him or to the general manager; however, there is no evidence that this was ever an enforceable "right" under an employment contract. While there is no doubt

that this opportunity for appeal was certainly present, there is no evidence that it was more than that. Moreover, we do not view the failure to give notice of their right to appeal as a violation of any right, contract or otherwise. We therefore hold that the trial court's decision directing a verdict on this ground was correct.

## IV. SOMMERFELD'S REINSTATEMENT.

■ In his post-trial motions, Sommerfeld argued for the first time that because the jury had found his release to be void, he had not actually been terminated and was entitled to reinstatement and backpay. The district court held that, if Sommerfeld was not terminated, he is still employed and cannot be reinstated. His recourse was therefore an action for past wages in state court. Throughout all the proceedings before the district court, Sommerfeld contended that his employment was terminated on November 29, 1982, and predicated a tort action sounding in coercion, fraud, and duress on the release as it related to severance pay. We would have to agree with the district court that if he has a remedy it is in state court; therefore, we affirm the decision of the district court on this ground.

## V. CONCLUSION.

Appellants have brought multiple grounds in this appeal. We conclude that all of them are without merit and affirm the decision of the district court for the reasons stated above.