823 F.2d 546
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Zygmunt J. DOROSIEWICZ, Plaintiff-Appellant,
v.
KAYSER-ROTH HOSIERY, INC., Defendant-Appellee.
 No. 86-3163
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1987.
Decided June 24, 1987.
 
 Paul Edward Marth (Forman & Marth, P.A.; Richard M. Warren; Walker, Ray, Simpson, Warren, Blackmon, Younce & Dowda, on brief), for appellant.
 Michael Austin Gilles (Martin N. Erwin; Michael E. Kelly; Smith, Helms, Mulliss & Moore, on brief), for appellee.
 Before HALL and SPROUSE, Circuit Judges, and JOSEPH F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Zygument J. Dorosiewicz initiated this action against his former employer seeking legal, equitable, and declaratory relief under the Age Discrimination Employment Act [ADEA] of 1967, 29 U.S.C.A. Sec. 621 et seq. (West 1985). The district court granted the defendant's motion for summary judgment because Dorosiewicz had executed a release, which the court found to be binding. We affirm.
 
 
 2
 Appellant joined Gulf & Western, the parent company of Kayser-Roth Hosiery, Inc., in 1973 as a manager of manufacturing systems. Three years later, he was transferred from Michigan to North Carolina to assist in the merger of accounting systems between Gulf & Western and its recently acquired subsidiary, Kayser-Roth Hosiery, Inc.
 
 
 3
 On June 20, 1984, Dorosiewicz was informed that he was being discharged immediately, but that he would receive six months' severance pay and full benefits, including help in finding another job within the company, and secretarial assistance. Ordinarily, terminated employees received only seven weeks' severance pay.
 
 
 4
 On July 13, 1984, Hampden Kenan, Kayser-Roth's Vice President for Personnel, entered the office appellant was using and handed him a letter that described the termination benefits appellant would receive. The letter also contained a general release clause, which stated, in pertinent part:
 
 
 5
 Except as set forth herein and except for any benefits you are entitled to under the retirement plan and employee savings plan, you hereby release Kayser-Roth Hosiery, Inc., Kayser-Roth Corporation and their affiliated corporations from any claims of any kind whatever.
 
 
 6
 Dorosiewicz initially declined to sign the release. He took it home with him and attempted to consult with at least three attorneys, one of whom advised him that, by signing the release, he would 'jeopardize' his right to sue Kayser-Roth. During the period of time Dorosiewicz was considering the release, he did not receive the monthly termination check described in the release letter.
 
 
 7
 Dorosiewicz finally signed the release letter on August 6, 1984 and thereafter received the severance benefits he had been promised. Dorosiewicz then filed his age discrimination claim, which was dismissed by the district court on Kayser-Roth's motion for summary judgment. This appeal followed.
 
 
 8
 Dorosiewicz contends that the release he executed in connection with this termination should not bar his ADEA claim for several reasons.
 
 
 9
 First, Dorosiewicz argues that ADEA claims may not be waived or released. He seeks to analogize ADEA cases to actions brought under the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C.A. Sec. 201 et seq. (West 1978). FLSA rights may not be waived. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945). Such an argument was considered and rejected by the Sixth Circuit in Runyan v. National Cash Register Corp., 787 F.2d 1039 (6th Cir. 1986) and the Eighth Circuit in Moore v. McGraw Edison Co., 804 F.2d 1026 (8th Cir. 1986). Moreover, the Equal Employment Opportunity Commission (EEOC) has taken a position contrary to that advocated by Dorosiewicz in this case:
 
 
 10
 The commission believes that the remedial purposes of the Act will be better served by allowing agreements to resolve claims whenever employees and employers perceive them to serve their mutual interests, provided that any waivers of ADEA rights in such agreements are voluntary and knowing. The enforcement provisions of the FLSA that are incorporated into the ADEA must be viewed in the context of the different policy considerations underlying the two acts. Although under the FLSA there is an absolute presumption that any waivers of minimum wage rights would necessarily be based upon unequal bargaining power and duress, [citation omitted], this reasoning does not apply to the ADEA. As earlier noted one purpose of the ADEA is to encourage the voluntary and expeditious resolution of disputes. Thus, the ADEA is analogous to Title VII in this respect, and accordingly the standards governing Title VII waivers should govern waivers under the ADEA. (emphasis added.)
 
 
 11
 We conclude that ADEA claims, like Title VII claims may, in appropriate circumstances, be waived.
 
 
 12
 Dorosiewicz next argues that even if ADEA claims may be waived, three peculiar facts make waiver inappropriate in this case: (1) the absence of specific mention of ADEA claims in the release; (2) the absence of EEOC approval of the release and (3) the alleged absence of a bona fide dispute at the time the release was executed.
 
 
 13
 The first two contentions do not merit extended discussion. The release purports to waive 'any claims of any kind whatever' against Kayser-Roth. It is not necessary that ADEA claims be specifically mentioned. Runyan v. National Cash Register, supra; Moore v. McGraw Edison Co., supra. Dorosiewicz's position that the EEOC must 'sign off' on any release of ADEA claims is not only unsupported by any authority, but is also contrary to the position taken by the EEOC, the very agency which Dorosiewicz seeks to involve in the waiver process. The EEOC has stated:
 
 
 14
 The policy that requires government supervision of releases and waivers is at odds with one that encourages expeditious resolution of disputes. Clearly, the blanket prohibition against non-government supervised ADEA settlements thus frustrates the interests of both employees and employers.
 
 
 15
 50 Fed. Reg. 40,870 (1985) (to be codified at 29 C.F.R. Part 1627).
 
 
 16
 We turn now to the factor which gave the district court the most concern: the alleged lack of a bona fide dispute at the time of the release which Dorosiewicz contends made the release unenforceable. It is argued that there was no dispute pending between Dorosiewicz and Kayser-Roth in July, 1984 when the letter containing the release was handed to Dorosiewicz for signature, because Dorosiewicz had already been promised the expanded severance pay benefits some three weeks earlier. The district court found that the June 20, 1984 promises were gratuitous, and thus created no legally enforceable obligations.
 
 
 17
 Upon careful review of the record, we conclude that Dorosiewicz's termination and the events surrounding it were a matter of dispute at the time the release was executed. When told of his impending discharge, Dorosiewicz questioned the reasons offered by Kayser-Roth. When presented with the release, he declined to sign it and told his employer he would have to look it over. During the period Dorosiewicz refused to sign the release, he was not afforded the severance pay which had been offered. Dorosiewicz kept an unsigned copy of the release from July 13, 1984 until August 6, 1984, a period of approximately three weeks. During this period, he contacted three different attorneys and was told by at least one of them that if he signed the release, he would jeopardize his ability to sue Kayser-Roth. These undisputed facts indicate that a bona fide dispute was extant at the time the release was signed.
 
 
 18
 Finally, Dorosiewicz argues on appeal that the question of whether the waiver in the case was voluntarily and knowingly executed is a question of fact which is inappropriate for summary judgment. The language of the release is clear and unambiguous. Dorosiewicz had the opportunity to consult with counsel and, in fact, discussed the release and its legal significance with more than one attorney. Most importantly, he has never contended that the waiver was not knowing and voluntary. Under such circumstances, there does not appear to be any genuine issue as to a material fact on this issue.
 
 
 19
 Accordingly, we hold that the district court correctly granted summary judgment for the defendant.
 
 
 20
 AFFIRMED.