## H. L. PIRTLE *v.* OPCO, INC.

CA 80-62                                        601 S.W. 2d 265
Court of Appeals of Arkansas
Opinion delivered July 2, 1980
Released for publication July 8, 1980

*Howell & Price*, by: *Merl Barns*, for appellant.

*Owens, McHaney & Calhoun*, by: *James Maurice Rogers*, for appellee.

STEELE HAYS, Judge. This is a case involving the drainage of surface waters over the property of adjoining landowners. Appellant, Mr. H. L. Pirtle, owned property to the west of appellee, Opco, Inc. Surface waters flowed downward in a southwesterly direction across appellee's property and then on to appellant's property. This drainage caused much of the water to back up on appellant's property, thereby creating a "wash" and making the land unfit to growing crops.

Appellant purchased his property in 1971. He had initially used the property for grazing purposes. During this time, the large amounts of water coming on to his property were not an insurmountable problem. Also, prior to 1977, he had planted the property in fescue and soybeans. In 1977, he planted the property in rice. He decided on this course of action after he had sold his cattle and realized it would be more profitable to grow rice on his property. Appellant testified that, at the time, he approached an employee of appellee's, Mr. Graham Mullen, about constructing a ditch at their joint expense on their boundary line to diminish the water problem. Appellant testified that Mr. Mullen ignored him. To the contrary, Mr. Mullen testified that appellant never discussed the water problem with him.

Nevertheless, a year later, appellant built a roadway across the mutual boundary to a well on the other side of the property. He testified that this was necessary in order for him to have access to the well. The roadway was elevated approximately three and one-half feet above ground level and therefore, served a joint purpose since it also kept much of the surface water from coming on to appellant's property.

Appellee then filed this law suit, alleging that appellant

had unlawfully constructed a dam which obstructed the natural flow of surface water. This "dam" caused flooding on appellant's property, thereby making it unfit for natural use. The chancellor entered a decree in favor of appellee, ordering the appellant to remove the "dam" in such a way as to restore the natural drainage of the surface waters from appellee's property. From the chancellor's decree, appellant brings this appeal.

Appellant's first point for reversal is that the chancellor's finding was against a preponderance of the evidence.

The rule in Arkansas as to surface water is that a landowner has the right to prevent surface water from coming on to his own property, as long as he does not unnecessarily damage his neighbor. *Smith* v. *Cruthis*, 255 Ark. 217, 499 S.W. 2d 852 (1973); *Solomon* v. *Congleton*, 245 Ark. 487, 432 S.W. 2d 865 (1968). This is, in essence, a modified version of the common law doctrine which gives the landowner the absolute right to fend off surface waters, even at the expense of damaging an adjoining landowner's property. At common law, surface waters were deemed to be a common enemy to all landowners and a landowner had the right to divert its course, and could even throw it back upon his neighbor from whose land it came. Arkansas first adopted its version of the common law doctrine in the case of *Little Rock and Fort Smith Railway Company* v. *Chapman*, 39 Ark. 463 (1883). It modified the rule to the extent that the right to fend off surface waters is not absolute, but the right must be exercised with due care so as not to inflict injury on a neighboring landowner "beyond what may be fairly necessary."

Under the rule as stated, we can not say that the chancellor's decision was against a preponderance of the evidence. Appellant built the roadway knowing what effect it would have on appellee's property. During cross-examination, he stated that he was not concerned about what effect the elevated roadway would have on his neighbor and that he understood it might cause a small pond on appellee's property. He attempted to rationalize this by stating, "I got one on my side, too." Appellant takes the position that it was not his water and therefore not his problem. However, as

stated earlier, surface waters are a common enemy to all landowners. Each landowner can prevent surface water from coming on to his own property as long as he does not unnecessarily damage a neighboring landowner's property. *Smith* v. *Cruthis, supra*. In this case, the evidence supports the decision of the chancellor that appellant went beyond what would be considered fairly necessary in preventing surface waters from coming on to his property. Other alternatives were open to him such as building a ditch or building the roadway but allowing for drainage of the surface waters off of appellee's property. Hence, we find that the chancellor's findings are not clearly against a preponderance of the evidence and accordingly must affirm his decision on appeal. *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W. 2d 465 (1979); *Massey* v. *Price*, 252 Ark. 617, 480 S.W. 2d 337 (1972).

Appellant argues one other point: that the court erred in failing to balance the hardships of the two parties. In essence, appellant argues that appellee had a duty to mitigate its damages by expending the amount necessary to alleviate the damage and that the remedy of injunctive relief was too extreme in that appellee would be required to remove his roadway. We think that appellant is reading something into the decree that is not there. Appellant is merely required to remove the dam in such a way as to provide for the natural flow of surface waters off of appellee's property. Charles Summerford, a professional engineer and land surveyor, testified that appellant could still build a ditch to alleviate the water problem which would not be too costly. As we read the decree, this alternative would still be open to appellant, as long as it retains the natural flow of surface waters off of appellee's property. Also, we do not believe appellee is required to mitigate his damages by building a ditch on his own property. The drainage problem on appellee's property was caused by the construction of the elevated roadway. Injunctive relief was the correct remedy in this case. *Morrow* v. *Merrick*, 157 Ark. 618, 249 S.W. 2d 369 (1923).

Therefore, the decree of the chancellor is affirmed.