William E. HENSLEE, Katherine L. Henslee, Stephen A. Wilson, and Lois M. Napper *v.* MADISON GUARANTY SAVINGS AND LOAN ASSOCIATION

88-45                                    760 S.W.2d 842

Supreme Court of Arkansas
Substituted opinion delivered January 9, 1989.

184

*Crockett and Brown, P.A.,* by: *Robert J. Brown,* for appellants William E. Henslee, Katherine L. Henslee, Stephen A. Wilson, and Lynn R. Wilson.

*Steven Napper, Ltd.,* by: *Steven Napper,* for appellant Lois M. Napper.

*Cuffman & Cuffman,* by: *Phillip Cuffman,* for appellee.

JACK HOLT, JR., Chief Justice. This appeal involves two issues: (1) whether under the facts of this case a one percent (1%) commitment fee constituted interest which, when added to the interest on a particular loan, tainted the transaction with usury; and (2) whether the adoption of Amendment 60 to article 19, § 13 of the Arkansas Constitution had the effect of repealing Ark. Code Ann. §§ 4-57-106 and 4-57-107 (1987). We find that both issues require an affirmative response.

Separate appellants William and Katherine Henslee and Stephen and Lynn Wilson obtained a $121,600.00 three-year loan from appellee Madison Guaranty Savings and Loan ("Madison") in order to fund the purchase of a building. Interest on the loan was at a fixed rate of twelve and one-half percent (12.5%) per annum — the maximum legal rate at the time. Before closing the loan, Madison required payment of a one percent (1%) commitment fee. Sometime later, the Henslees and Wilsons defaulted on the loan. Madison then filed suit to foreclose its mortgage lien on the property. Separate appellant Lois M. Napper had a second mortgage lien on the same property and was joined as a party.

The Henslees, the Wilsons, and Napper filed counterclaims in the Madison suit alleging that the commitment fee constituted interest which, when added to the 12.5% interest, tainted the loan transaction with usury. Napper also requested that her lien be declared superior to that of Madison by virtue of Ark. Code Ann. § 4-57-107(b)(3). The trial court concluded that the commitment fee did not make the loan usurious and that the Napper lien remained inferior to that of Madison. A foreclosure decree was then entered. From that order comes this appeal.

Appellants first argue that the chancellor erred in his determination that the commitment fee did not make the Madison loan usurious. Next, it is argued that the adoption of Amendment 60 to article 19, § 13 of the Arkansas Constitution neither expressly nor by implication repealed our code provisions on usury and interest, which in part allowed second lien creditors such as Napper to assert priority over liens securing usurious agreements.

We find that the chancellor's determination with regard to the issue of usury was clearly against a preponderance of the evidence. In doing so, we conclude that Napper's lien remains inferior to Madison's as we find that Amendment 60 repealed Ark. Code Ann. §§ 4-57-106 and 4-57-107 (1987) by implication. We therefore reverse and remand for proceedings not inconsistent with this opinion.

On appeal, this court reviews chancery cases *de novo* on the record. We do not reverse unless the chancellor's findings are clearly erroneous. *Milligan* v. *General Oil Co.*, 293 Ark. 401, 738 S.W.2d 404 (1987).

Appellant Bill Henslee first discussed the loan in April 1985 with Don Denton, chief loan officer for Madison. Sometime in May 1985, Henslee sent Denton a loan application which apparently proposed a "one point interest" "fee paid to lender." It is unclear from the record what part Henslee's application played in the subsequent loan transaction. However, Denton testified that during negotiation of the loan it was emphasized to Henslee that Madison *would require* a one percent (1%) commitment fee for taking the market risk of funding a fixed interest loan at some future date. Denton's testimony included the following:

> The purpose of my collecting the 1% was *to pass on* the risk that interest rates might go up and you would have a fixed rate loan. [Emphasis ours.]

According to Denton, Henslee was told there would be a 30-day period between acceptance of the commitment and closing of the loan.

Denton also testified that commitment fees were not charged on all of Madison's loan transactions; rather, only commercial loans that would be on the books for an extended period of time. Finally, Denton testified that commitment fees were only required in cases where the loan would be funded some time after the commitment, not in cases where loans were funded on or about the same day Madison agreed to make the loan.

On the other hand, Henslee denied that during negotiation of the loan Denton ever mentioned that Madison would require payment of a one percent commitment fee; though this testimony is at variance with the proposal contained in Henslee's application and with the testimony of Don Denton. In any event, Henslee received a letter from Madison on or about June 19 which included the following language:

> We are pleased to extend a commitment for a loan in the amount of $121,600.00 for the purchase of real property . . . . This loan will be amortized over twenty-five years with a three-year balloon at 12½% rate.
>
> . . . .
>
> Prior to closing and funding of this loan . . . a fee in the amount of $1,216.00 will be due for this commitment. This commitment fee cannot be funded from proceeds of the loan. Your check for this amount will be appreciated.
>
> Upon the receipt of this commitment fee, final instructions will be given . . . for closing.

Despite obvious discrepancies in the testimony as to when Henslee first knew Madison would require a commitment fee, the commitment letter itself fails to reflect the claimed market risk of funding a fixed interest loan at some future date and, as the record clearly shows, Henslee paid the commitment fee immediately upon receipt of the letter and the loan was closed on the same

afternoon. It was funded on or about June 20, and the mortgage was filed on or about June 24. Therefore, whatever the negotiations between the parties may have been, the *net* result was spelled out in the Madison commitment letter of June 19 — the loan would not be closed or funded until Henslee paid a one percent (1%) commitment fee.

At the time the loan was made, the federal reserve discount rate was seven and one-half (7.5%) percent. Amendment 60 to Article 19, § 13 of the Arkansas Constitution provided that the maximum legal rate of interest was five percent (5%) above the federal discount rate. Therefore, the loan was for the maximum lawful rate of interest — twelve and one-half percent (12.5%).

The first issue we must address is whether the one percent (1%) commitment fee can be considered as additional interest on this loan. In *Arkansas Savings and Loan Association* v. *Mack Trucks of Arkansas*, 263 Ark. 264, 566 S.W.2d 128 (1978), the loan amount was $340,000.00, which was secured by a mortgage. Arkansas Savings, the lender, made periodic disbursements of the loan proceeds and at one point disbursed to itself $3,400.00 as a "service charge." This charge was later characterized as a "commitment fee." The fee was for the stated purpose of "the lender binding itself 'absolutely and unconditionally to make said loans and advances.'" The chancellor determined that the commitment fee was interest which, when added to the interest on the loan, made the agreement usurious. We affirmed.

In *Mack Trucks* this court cited *Sosebee* v. *Boswell*, 242 Ark. 396, 414 S.W.2d 380 (1967), for the principle that "the moneylender cannot impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business." We said in *Mack Trucks* that the commitment fee constituted a discount — the taking of interest in advance. The commitment fee amounted to interest because it was nothing more than the lender's overhead or cost of doing business — which the lender could not pass on to the borrower. Because the fee was interest, and because that interest when added to the interest on the loan exceeded the maximum allowable under law, the loan was usurious.

To distinguish *Mack Trucks*, appellee Madison points out

that there the lender apparently charged a one percent fee *on all* commercial type loans, and that the fee was paid out of the proceeds of the loan. Neither fact is present in the case at bar. However, Madison has failed to provide persuasive reasoning as to why these factors would serve as a valid distinction. The testimony shows that Madison charged commitment fees on many of its loans. Further, we see little difference between the situation where the loan amount is reduced because the creditor disburses to itself a 1% fee out of the loan principal or the situation where the borrower pays the commitment fee out of his own pocket prior to funding of the loan. In either case, the creditor is "passing on" the cost of doing business to the borrower, which we held in *Mack Trucks* could not be done under the circumstances without running afoul of the proscription against usurious loans.

The issue was later addressed in *First National Mortgage Co.* v. *Arkmo Lumber & Supply Co.*, 277 Ark. 298, 641 S.W.2d 31 (1982). In an opinion by former justice George Rose Smith, we again affirmed the chancellor's determination that a loan agreement and mortgage were tainted by usury because of a requirement in the note that the "signers hereby agree to pay 1% commitment fee." Citing *Mack Trucks*, this court stated:

> We have held that a commitment fee, assessed by the lender for its readiness to have the total amount of a . . . loan available when needed, is in fact part of the lender's cost of doing business and must be treated as interest if charged to the borrower.

■ Nothing we said in *Arkmo* suggested that the lender must require commitment fees on all loans, nor was there any mention of a requirement that the fee be paid out of the loan principal. Madison basically argues that *Arkmo* is an unwarranted extension of our decision in *Mack Trucks*. No convincing argument is made to support that contention.

■ Madison's agent and representative, Don Denton, candidly conceded that the one percent commitment fee is normally assessed simply to pass on to borrowers the risk assumed by Madison that its costs might change as to a fixed interest three-year loan which would not be funded until some future date. Here, however, no future date was specified. Although there is

some testimony that timing of the closing date was geared to Henslee's need for immediate funds, the commitment letter on its face demonstrates that payment of the commitment fee would be contemporaneous with Madison's act of closing and funding of the loan. Accordingly, there was no risk, and Madison did no more than take interest in advance, which when added to the interest stated on the loan agreement made the loan usurious. To that extent, the chancellor's judgment must be reversed.

It now remains to determine the effect of our conclusion that the loan agreement was tainted by usury. Before the adoption of Amendment 60, article 19, § 13 of the Arkansas Constitution provided:

> All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law . . . .

Pursuant to the requirement that the General Assembly prohibit all such contracts, the legislature enacted Ark. Stat. Ann. §§ 68-601—68-614 (Supp. 1985), now compiled as Ark. Code Ann. §§ 4-57-101—4-57-108 (1987), which govern interest and usury in commercial law.

Amendment 60 changed the law, however, and article 19, § 13 of the Arkansas Constitution now provides that the maximum rate of interest on any contract entered into shall not exceed five percent (5%) per annum above the federal discount rate. Further:

> All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. A person who has paid interest in excess of the maximum lawful rate may recover . . . twice the amount of interest paid.

The express intent of Amendment 60 is that the taint of usury voids the agreement only to the extent of unpaid interest — persons who have paid interest in excess of the maximum lawful rate may recover twice the amount of interest paid. Amendment 60 further provides:

> The provisions hereof revoke all provisions of State

law which establish the maximum rate of interest charge-able in the State or which are *otherwise inconsistent herewith.* [Emphasis ours.]

The issue at this point is the effect of Amendment 60 on existing code provisions which allow second lien mortgage credi-tors such as Lois Napper to gain priority over Madison's lien upon a finding that Madison's agreement was tainted by usury. Ark. Code Ann. § 4-57-107(a)(1) (1987) provides that every "lien created or arising by mortgage . . . to secure the payment of a [usurious] contract . . . is void." Subsection (b)(3) then provides:

Any creditor [Napper] whose debtor [Henslees and Wilsons] has given a lien by mortgage . . . to secure the payment of a usurious contract may bring his suit in equity against the parties to the usurious contract [debtors and Madison] and recover judgment for his debt against the debtor, and a decree cancelling and annulling the usurious lien . . . .

Ark. Code. Ann. § 4-57-106 (1987) provides:

All bonds, bill, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon there is reserved, taken, or secured, or agreed to be taken or reserved, any greater sum or greater value for the loan or forbearance of any money . . . than is prescribed [by law] shall be void.

Madison contends that our code provisions on usury and interest present an irreconcilable conflict with the intent of Amendment 60 that the taint of usury affects only the unpaid interest, whereas section 4-57-107 would void the lien underlying the contract, and section 4-57-106 would void the contract itself. Napper, on the other hand, argues that the legislature could not have intended that parties clearly protected under the laws enacted prior to Amendment 60 should now be without a remedy and that the only purpose of the Amendment was to change the lawful rate of interest.

Our case law provides that the adoption of a particu-lar constitutional amendment does not necessarily have the effect of invalidating every act of the General Assembly bearing upon the subject, particularly those passed prior to the effective date of

the amendment, if they are not in irreconcilable conflict with or repugnant to the amendment. *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973). An existing statute is therefore superseded by a subsequent constitutional amendment only when the legislature so provides, or where there is an irreconcilable conflict or the statute is necessarily repugnant to the new constitutional provision. *Id.* at 341. In this regard, a basic and fundamental rule when considering the effect of both statutes and constitutional amendments is that repeal by implication is not favored and is not allowed except where there is a repugnancy between the former and later such that both cannot stand together. *Id.* at 341—342.

When we consider the pre-Amendment 60 mandate of article 19, § 13 that usury voids contracts both as to interest and principal, it becomes clear that sections such as 4-57-106 and 4-57-107 were enacted to provide for the obvious; namely, all bonds, bills, notes, assurances, conveyances, contracts, or securities of any kind taken in excess of the lawful rate of interest would be void, and liens securing the applicable agreements could be voided by inferior lien creditors. Those remedies are clearly and necessarily repugnant to the stated provision of Amendment 60 that contracts in excess of the maximum lawful rate of interest are void *only as to unpaid interest*.

The provisions of Amendment 60 and the remedies provided by our code provisions on usury and interest simply cannot stand together. We therefore conclude that Amendment 60 by implication repealed Ark. Code Ann. §§ 4-57-106 and 4-57-107.

The chancellor's determination that the Madison loan agreement was not tainted by usury is reversed. We remand for further proceedings and assessments under Amendment 60 not inconsistent with this opinion.

Reversed and remanded.

PURTLE and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. On appeal, we review chancery cases *de novo* reversing the chancellor only when the findings of fact are found to be clearly erroneous or clearly against the preponderance of the evidence. And since the question of the preponderance of evidence turns to a large extent on the credibil-

ity of the witnesses, we should give deference to the chancellor. *Milligan* v. *General Oil Co.*, 293 Ark. 401, 738 S.W.2d 404 (1987); *Jackson* v. *Farm and Commercial Properties*, 284 Ark. 130, 680 S.W.2d 105 (1984); *Pirtle* v. *Opco, Inc.*, 269 Ark. 862, 601 S.W.2d 265 (1980); *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W.2d 465 (1979). The majority disregards this well settled principle of law, and therefore I must respectfully dissent.

The only element in this case which even remotely taints the transaction as usurious seems to be the closeness in time in which the payment of the commitment fee and the closing of the loan occurred. The commitment fee constituted a totally separate transaction which was *not* paid out of the proceeds of the loan as in *Ark. S&L Assn.* v. *Mack Trucks of Ark.*, 263 Ark. 264, 566 S.W.2d 128 (1978). Testimony indicated that Harry Don Denton, chief lending officer at Madison Guaranty, discussed the requirement of the commitment fee prior to the closing of the loan and in fact sent a letter to William Henslee on June 19th detailing the terms of the commitment fee arrangement. The chancellor, in the superior position to judge the credibility of the witnesses, found that Henslee did know about the requirement of the payment of a commitment fee and that he was under no obligation to close the loan so soon after the payment of this fee.

The commitment fee was not paid out of the proceeds of the loan, nor was the commitment fee arrangement recited in the note which so obviously ties the loan and the fee together as in *First Nat'l Mtg. Co.* v. *Arkmo Lbr. & Supp. Co.*, 277 Ark. 298, 641 S.W.2d 27 (1982). Here the transactions were separate and distinct.

In *Mack Trucks*, citing *Sosebee* v. *Boswell*, 242 Ark. 396, 414 S.W.2d 380 (1967), we discussed the principles which determine when additional charges, namely, a service charge/commitment fee, constituted interest. The first principle was that any profit extracted by the lender which depended upon a contingency not within the control of the debtor constituted interest. The second principle stated that the moneylender could not impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business or else such charges were deemed to be interest.

In discussing this second principle, the costs of doing business, the court focused on whether the lender, Arkansas Savings and Loan, as a matter of course charged a one percent commitment fee on all of its loans—construction, long term and residential loans. In finding that the one percent commitment fee applied across the board to various Arkansas S&L's loans the court stated "this is no more than the collection from the borrower of a part of the lender's overhead or expense of doing business." Therefore, in *Mack Trucks* the court determined that a commitment fee paid out of the proceeds of the loan, by a lender who, regardless of the type of loan, charges the one percent commitment fee, constituted interest, and when added to the stipulated interest fee of the loan, the loan was usurious.

Subsequently, in *First National Mortgage Co.* v. *Arkmo Lumber & Supply Co.*, 277 Ark. 298, 641 S.W.2d 31 (1982), this court held that a commitment fee not charged separately at the outset but recited in the note inextricably tied the note and the commitment fee together, and thus the commitment fee could be considered interest and when added to the loan interest rate, the loan was usurious.

The majority opinion said:

> We have held that a commitment fee, assessed by the lender for its readiness to have the total amount of a construction loan available when needed, is in fact part of the lender's cost of doing business and must be treated as interest if charged to the borrower.

The majority apparently equates Madison Guaranty's assessment of a commitment fee for agreeing to grant the loan at a later date on certain terms and conditions as passing on the cost of doing business. If this is indeed its position, then it seems that the majority believes that a commitment fee *per se* should be considered as interest because it inevitably passes on the lender's cost of doing business. However, the majority opinion only hints at this reasoning.

The facts of this case certainly distinguish it from both *Mack Trucks* and *Arkmo* in that the commitment fee was not paid from the proceeds of the loan, nor was the recitation of the commitment fee inextricably bound up with the note, and Madison Guaranty

did not charge this one percent commitment fee as a matter of course on all its loans. Therefore, the only possible taint of usuriousness would be the proximity of the time between the closing of the loan and the payment of the commitment fee. The closeness was not the intention of the bank, but rather at the insistence of the customer.

The majority states that the June 19th letter to Henslee "on its face demonstrates that payment of the commitment fee would be contemporaneous with Madison's act of closing." This letter on its face only states that prior to the closing of the loan, this commitment fee must be paid and once the fee is paid, instructions for the closing will be given. I can find no basis for the majority's deduction that this letter anticipated a contemporaneous payment of the commitment fee and the closing of the loan. In fact, the chancellor found that the closing so close in time to the payment of the commitment fee was for Henslee's benefit and the testimony of Mr. Denton that "it was my understanding that the loan would be funded some date in the future, . . . but I certainly did not anticipate that it would be funded the next day," was deemed credible by the chancellor.

Despite citing language from *Arkmo* the majority shys away from stating that a commitment fee *per se* constitutes interest because it is simply the lender passing off its costs of doing business to the borrower. In fact, the majority opinion states that because of the closeness in time, the bank undertook no business risk, and thus had no risk to pass onto the borrower. Yet, the majority ignores the reason for the closeness as well as the chancellor's determinations as to credibility. The majority leaves open the possibility that under the right circumstances—keeping the commitment fee and the loan separate as in this case—but without such closeness in time, that a commitment fee may be charged by a lender without constituting interest. However, what would be an appropriate length of time so as not to be deemed too close? Today's holding is an invitation for a case in which an arbitrary distinction will have to be drawn as to what exactly is too close in time.

PURTLE, J., joins this dissent.