Mr. Chris Burrow Director, Arkansas State Building Services 1515 West 7th Street Suite 700 Little Rock, AR 72201
Dear Mr. Burrow:
This is in response to your request for an opinion regarding State Agencies, Boards, Commissions and Institutions' financing of capital improvements with bond proceeds from the Arkansas Development Finance Authority ("ADFA").
Your questions in this regard will be restated and answered in the order presented. We must note as an initial matter, however, that the answers may vary depending upon the particular circumstances surrounding development of the improvements. We have not been provided with any facts in this regard, and it must be recognized that the facts may impact our conclusions. We assume that the questions are asked in relation to the financing of capital improvement construction projects. Our review indicates that the responses may turn in particular upon whether the state agencies are developing the projects through loans of ADFA bond proceeds, or whether ADFA is the developing entity.
Your specific questions are as follows:
1. Are Methods of Finance required?
It is my opinion that the answer to this question is, generally, "yes" in relation to construction projects undertaken by state agencies with ADFA bond proceeds. Arkansas Code of 1987 Annotated22-2-107(a)(1)(B) (Supp. 1987) states that the "Construction Section" of Arkansas State Building Services ("SBS") shall "[a]pprove methods of finance and establish and maintain complete construction files on all jobs including plans and specifications for alterations, renovations, and repairs of all capital improvements." (Emphasis added.) I believe that this requirement is generally applicable in the context of a state agency's financing of capital improvements with ADFA bond proceeds.[1]
It should be noted, however, that the State Highway Commission and the Arkansas State Highway and Transportation Department are specifically exempted from the Arkansas State Building Services Act. A.C.A. 22-2-102 and 22-2-103.
Certain language appearing in the Arkansas Development Finance authority Act (A.C.A. 15-5-101, et seq.) should, however, be addressed in this regard. Section 15-5-104 sets forth provisions governing the construction of that act, including the following under subsection (c):
 The issuance of bonds under the provision of subchapters 1, 2, and 3 of this chapter need not comply with the requirements of any other state laws applicable to the issuance of bonds, notes, and other obligations and it shall not be necessary to comply with general provisions of other laws dealing with public facilities, their acquisition, construction, leasing, encumbering, or disposition. (Emphasis added.)
Section 15-5-104(c) may, instead, be reasonably construed to provide assurance that "other laws dealing with public facilities" will generally not be applicable simply by virtue of the fact that the financing for a particular activity or project is provided by or through ADFA. One might contend, in the absence of this exemption, that such other laws will apply, due to ADFA's status as a public entity. See A.C.A. 15-5-201. The legislature clearly did not intend to subject private enterprise to these laws. Section 15-5-104(c) confirms legislative intent in this regard. It should not, however, be read to extend such an exemption to state agencies in connection with their construction projects.
It should also be noted that this section appears to focus upon ADFA, and its exemption from certain other state laws. Thus, it may be contended that ADFA need not itself comply with these other laws. This conclusion is indicated by the few cases wherein the Arkansas Supreme Court has construed language similar to that of15-5-104. See Dumas v. Jerry, Judge, 257 Ark. 1031, 521 S.W.2d 539
(1975); Daniels v. City of Ft. Smith, 268 Ark. 157, 594 S.W.2d 238
(1980). These cases were decided in the context of projects funded by revenue bonds issued under the authority of Act 9 of 1960, as amended. ("Act 9"). The key section of that act is found at A.C.A. 14-164-204, which provides:
 This subchapter shall be liberally construed to accomplish its intent and purposes and shall be the sole authority required for the accomplishment of its purposes. To this end, it shall not be necessary to comply with general provisions of other laws dealing with public facilities, their acquisition, construction, leasing, encumbering, or disposition.
In Dumas, the Court concluded that a county was exempt from competitive bidding statutes when it leased county property for industrial purposes. In Daniels, the prevailing minimum wage law was held inapplicable in the context of an Act 9 industrial revenue bond project.
These cases offer support for the proposition that ADFA is exempt from general provisions of other laws dealing with public facilities since DFA, like counties and cities under Act 9, is authorized to "lease, acquire, construct, sell, and otherwise deal in and contract concerning any facilities." A.C.A.15-5-207(b)(23). It may be successfully contended that Dumas and Daniels are factually apposite to this extent. The applicability of these cases in the context of state agencies' capital improvement projects is, however, questionable. Unlike Act 9, the Arkansas Development Finance Authority Act does not focus upon the development of facilities. Rather, it emphasizes the financing mechanism for achieving the stated purposes. It may reasonably be concluded from this distinction that the language of 15-5-504(c) will not be deemed to encompass the specific requirements imposed upon state agencies under the State Building Services Act. (A.C.A. 22-2-101, et seq.)
2. Is bidding and the awarding of contracts accomplished in accordance with A.C.A. 22-9-203?
The answer to this question, consistent with my response to question number 1, is "yes," assuming that the agency proposes to enter into contracts ". . . for the making of major repairs or alterations, for the erection of building or other structures, or for making other permanent improvements." A.C.A. 22-9-203(a).
3. Is legislation authorization for expenditures required?
It is my opinion that the answer to this question is, generally, "yes," to the extent the funds involved are held or owned by the state agency, board, commission, or institution. Such funds would appear to constitute "cash funds," and as such must be budgeted and appropriated in accordance with A.C.A. 19-4-801, et seq.
4. Are payment requests subject to voucher examination?
The answer to this question is, in my opinion, also "yes," with regard to payment requests made by state agencies in connection with capital improvements financed with ADFA funds. See A.C.A.22-2-107(a)(1)(C) and 19-4-801, et seq.
5. Are Design Professionals selected in accordance with A.C.A.22-2-107(3) and SBS Standards and Criteria?
As previously stated, it is my opinion that the provisions of A.C.A. 22-2-101, et seq. are generally applicable in the context of construction projects undertaken by state agencies with ADFA bond proceeds. Thus, to that extent, the answer to this question is "yes."
6. Are Design Professional contracts sent to the Legislative Council for their review?
The Arkansas Supreme Court's recent ruling in the case of Chaffin v. Arkansas Game and Fish Commission, 296 Ark. 431 757 S.W.2d 950
(1988) must be considered in response to this question. The legislation at issue in that case required the submission of all professional or consultant services contracts to the Chief Fiscal Officer of the State for reporting to the Legislative Council for its "review and advice." The court determined that this practice violates the separation of powers doctrine and is therefore unconstitutional. 296 Ark. at 442-444.
This case compels us to conclude that requirements involving the submission of contracts to the Legislative Council are constitutionally suspect and may be subject to challenge on that basis.
7. Arkansas Code 22-2-107(1) outlines the duties and responsibilities of the State Building Services Office of Construction. What responsibilities does the office have regarding capital improvements for all State Agencies, Boards, Commissions and Institutions paid with these ADFA funds?
It is my opinion that the duties and responsibilities of SBS, as outlined in A.C.A. 22-2-107, are generally applicable with regard to state agency capital improvements that are financed with ADFA funds, as previously discussed. The specific exceptions provided for under the Arkansas State Building Services Act must, however, be considered. See n. 1.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] "Capital improvement" means ". . . all lands, buildings, structures, utilities, on-site and off-site improvements, and other appertaining improvements, existing or future, and all construction, repairs alterations, and renovations thereof which are undertaken, owned, operated, or otherwise managed by a state agency, except that capital improvements shall not include construction and reconstruction of roads and bridges in the state highway system by the State Highway Commission, nor shall the term "capital improvements" include any building, facility, plant structure, or other improvements constructed by or in behalf of the Arkansas State Highway and Transportation Department or the State Highway Commission." "State agency" is defined under A.C.A. 22-2-102(5) as "any board or commission, agency, department, institution of higher learning including colleges, universities, and vocational — technical schools, or other state institutions." It is my opinion that this language does not necessarily operate to effectively nullify other laws "dealing with public facilities" when a state agency obtains financing through ADFA for capital improvements. Such a result could only be reached through the implied repeal or amendment of laws such as the Arkansas State Building Services Act (A.C.A.22-2-101, et seq.); and we know that repeals by implication are not favored in construing statutes. Henslee v. Madison Guaranty Sav. Loan Ass'n, 297 Ark. 183, 760 S.W.2d 842 (1988).