The Honorable Jodie Mahony State Representative 406 Armstrong Building El Dorado, Arkansas 71730
Dear Representative Mahony:
This is in response to your request for an opinion on how a first class city with the mayor-council form of government terminates a police chief or fire chief. You note that A.C.A. § 14-43-505
(1987) provides that the city council alone shall have the power to remove the chief on recommendation of the mayor. You also note, however, that the chiefs are hired by the civil service commission and civil service employees discharge is covered under A.C.A. § 14-51-308 (Cum. Supp. 1991). You also inquire as to what appeal procedure is followed after the termination. You inquire whether the chiefs, after being terminated through action of the mayor and council, have any right to appeal to the civil service commission or to circuit court. As a final matter, you indicate that similar questions have also arisen in cities with the city manager form of government.
Your questions have never been addressed by a court of competent jurisdiction. Two previous attorney general opinions touch upon the issue, however. See e.g. Op. Att'y Gen. Nos. 91-395, n. 1 and 91-188 at 4. See also Op. Att'y. Gen. No. 93-147
(concerning cities with the city manager form of government). The first opinion cited above indicates, in a footnote which can be fairly characterized as dicta, that the city council alone has the power to remove the police or fire chief, upon recommendation of the mayor. No action of the civil service commission is contemplated by the opinion. The next opinion cited appears to indicate in the final sentence that the city council alone has the authority to remove the chiefs, but does not mention any recommendation of the mayor. This opinion, however, was not issued in response to a question regarding the authority to terminate a chief, and does not therefore make any express conclusions in response to that issue.
It appears, therefore, that your question has never been squarely addressed by either a binding court decision or an official opinion of this office. It is my opinion that the question is unclear under current law. A definitive answer to your questions can only be provided by a court of competent jurisdiction. A strong argument can be made, however, that the authority given to the mayor and city council in A.C.A. §§ 14-43-504 and 14-43-505
has been impliedly repealed by the enactment and implementation of the civil service laws, and that therefore the civil service commission would have the final authority to terminate the police or fire chief. Any authority exercised by the mayor or council with regard to termination would therefore emanate only from the operation of local civil service rules and regulations.[1]
In 1948, the Arkansas Supreme Court concluded that the enactment of the civil service laws impliedly repealed the mayor's power (found at A.C.A. § 14-43-504), to appoint the chief of police in cities with the aldermanic form of government. Connor v.Ricks, Mayor, 212 Ark. 833, 208 S.W.2d 10 (1948). The court, in construing Act 28 of 1933, (the police and fire civil service law), focused on the portion of that act which stated: ". . . provided that this act shall not apply to the chief of police in all cities which now have, or may hereafter have, a commission form of government, and provided further that the chief of police in said cities shall be appointed and removed as now provided by law." Acts 1933, No. 28, Section 1. (Emphasis added.) The court concluded that "by expressly excluding the cities having the commission form of government, the Legislature made apparent its conclusion that in all other cities the appointment of the chief of police would be governed by the municipal civil service act." Connors, supra at 836. The court also relied upon the previous case of Stout v. Stinnett, 210 Ark. 684,197 S.W.2d 564 (1946) wherein the court stated: "The act of 1875 [14-43-504] gave the mayor the power to appoint `the chief of the police department' as well as the right to suspend him for cause. This power has now been taken away from the mayor and placed in the hands of the civil service commission by Act 28. . . ." Id. at 686. The court in Connors, however, noted the following: "That this Act 28 worked a limitation on the mayor's power as previously possessed under § 9844, Pope's Digest, is too clear to admit of doubt. Of course, the entire § 9844, Pope's Digest, was not repealed, but only so much of the section as theretofore had empowered the mayor to name the chief of police, in cities operating under the aldermanic system." Connors, supra at 836-837. The court does not therefore expressly conclude that the mayor's power of suspension has been impliedly repealed, or that the city council's ultimate authority to remove the chief has been repealed. The language of Stout, however, can be construed as indicating that the mayor's power of suspension has been impliedly repealed. Additionally, the rationale of the court inConnors with regard to the implied repeal of the mayor's power of appointment applies equally with regard to the mayor's power of suspension and the city council's power of removal. The court placed great emphasis on the provision of Act 28 which excluded police chiefs in cities with the commission form of government from the provisions of the civil service law. That provision stated that those police chiefs were to be "appointed andremoved as now provided by law." (Emphasis added.) The court inConnors found that this language made apparent the legislature's conclusion that in all other cities theappointment of the chief would be governed by civil service. The language above, however, also excludes the removal of chiefs in cities with the commission form of government from the operation of civil service laws, and would therefore equally support the proposition that the legislature intended that in all other cities, the removal of the police chief would be governed by civil service laws. This language may therefore have the effect of impliedly repealing not only the mayor's power of appointment and suspension found in A.C.A. § 14-43-504, but also the city council's power of removal found at A.C.A. 14-43-505. These two statutes are related, and in fact the latter, giving the city council the power to remove the police or fire chief, parrots the language of the former regarding the mayor's recommendation to suspend a chief for inefficiency, misconduct, or neglect of duty. An argument can therefore be made, based upon the language of the decision in Connors, that the enactment of the civil service laws impliedly repealed both the mayor's authority under A.C.A. § 14-43-504 to suspend a chief and the council's ultimate authority, found at A.C.A. § 14-43-505, to terminate the chief.
Uncertainty as to the exact status of the law on termination of police and fire chiefs stems in part from the difficulty created in determining the fallout from an implied repeal. Ordinarily, to work an implied repeal, the implication of legislative intent to repeal or supersede the statute must be clear, necessary and irresistible. Riceland Foods Inc. v. Second Injury Fund,289 Ark. 528, 715 S.W.2d 432 (1986.). An implied repeal is generally not allowed except where there is a repugnancy between the two statutes such that both cannot stand together. Henslee v.Madison Guaranty Savings and Loan Ass'n., 297 Ark. 183,760 S.W.2d 842 (1989). A statute is not repealed by implication where there exists harmonious construction of both statutes. Waire v.Joseph, 308 Ark. 528, 825 S.W. 2d 594 (1992). Another way in which implied repeals result, however, is where the legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute for the old. An implied repeal results in such case even if the two acts are not expressly repugnant. Smith v.Bentley, 493 F.Supp. 916 (D.C. Ark. 1980). See also Nancev. Williams, 263 Ark. 237, 564 S.W.2d 212 (1978).
The court in Connors did not undertake an analysis of the exact language of each statute which was so "repugnant" as to create a repeal by implication. The court did not construe the relevant language of the civil service law which stated that the civil service commission was to adopt rules and regulations providing for "the qualifications of any applicant for appointment to anyposition on the police or fire department. . . .," or indicate that this language conflicted with A.C.A. § 14-43-504, (authorizing the mayor to appoint the chiefs), to such an extent that an implied repeal resulted. The court merely looked to the section exempting chiefs in cities with the commission form of government, and viewed it as evidence of legislative intent that chiefs in other cities were to be appointed by the civil service commission.
A close reading of the Connors decision therefore leads to the conclusion that the second avenue of implied repeals was at issue therein. The court, as noted above, did not undertake any specific analysis of contradictory language of the two acts. It concluded merely that there was evidence of legislative intent that the appointment of the chief of police would be "governed by the municipal civil service act." 212 Ark. at 836. This reference to the entire act "governing" the appointment of chiefs and the court's reference to the civil service act being "comprehensive" (212 Ark. at 834) indicates the court's conclusion that the act was intended to comprehensively address the procedure for appointment of police chiefs, and was intended as a replacement for the old statute reposing this authority in the mayor. An implied repeal in such instance results even though the language of the statutes in question does not expressly conflict. As noted above, the evidence of legislative intent relied upon by the court (the exclusion of cities with the commission form of government) applies equally to the removal procedure for chiefs as it does to the appointment power. The court's conclusion, therefore, that the civil service act worked a substitution and replacement of the appointment statutes, applies equally, in my opinion, to the statutes which formerly governed the power of removal. The court would not, in my opinion, in light of the rationale in Connors, compare conflicts in the language of the civil service statutes relative to discharge with the language of A.C.A. §§ 14-43-504 and -505 relative to suspension and discharge, and try to find the conflicts and harmonize the remaining provisions.[2] Such an analysis is not crucial to a finding of an implied repeal based upon the substitution and replacement of an old statute with a new one. In my opinion the court in Connors has evidenced its belief that the legislature intended the civil service statutes to govern the employment of chiefs of police and fire departments.
This conclusion is tacitly acknowledged and implicit in several decisions of the Arkansas Supreme Court. See e.g., Fiveashv. Holderness, 190 Ark. 264, 78 S.W.2d 820 (1935) (holding civil service discharge procedures do not apply to dismissal of police chief where his office is abolished for purely economic reasons);Ellis v. Allen, 202 Ark. 1007. 154 S.W.2d 815 (1941) (same);Civil Service Commission of Fayetteville v. Cruse, 192 Ark. 86,86 S.W.2d 922 (1936) (commission had authority to discharge police chief for fraud, crime or being unfit to hold office);Civil Service Commission of Van Buren v. Matlock,206 Ark. 1145, 178 S.W.2d 662 (1944),(commission had authority to demote chief after charges were filed with the commission by the mayor and council); Malvern Civil Service Commission v. Bass,252 Ark. 178, 477 S.W.2d 842 (1972) (commission had authority to terminate acting police chief for apparent violation of commission rules); and Harrison Civil Service Commission v.Reid, 261 Ark. 42, 546 S.W.2d 413 (1977) (civil service commission's dismissal of police chief for committing fiscal improprieties upheld).
It is my opinion, therefore, although an argument can be made to the contrary, that a strong argument can be made that the mayor's power of suspension and the council's power of termination over the chiefs has been impliedly repealed by the enactment of the civil service laws. In my opinion the decision in Connors can be construed as acknowledging the taking up of the entire subject matter of appointment of chiefs of police and fire and placing it under the rubric of civil service laws. Whether the mayor or council have any remaining initial authority to suspend or terminate police or fire chiefs, would, in my opinion depend upon to what extent such authority is granted by civil service statutes and the local civil service rules and regulations implementing them.
You have posed a final question with regard to the termination of police and fire chiefs in cities with the city manager form of government. I have enclosed for your review a copy of Op. Att'y. Gen. No. 93-147 which concludes, although the law is not entirely clear, that the civil service commission has the authority to terminate the chiefs of police and the fire department, and to make rules and regulations governing such terminations. Cfalso, Sanders v. City of Fort Smith, 251 Ark. 494,473 S.W.2d 183 (1971) (holding under similar statutes that in a city with city administrator form of government, the city administrator did not have authority to discharge the fire chief because local civil service rule with regard to notice was not followed).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] An exception has been recognized in the past if the council decides to eliminate the office of chief for economic reasons. In such an instance civil service procedures regarding the termination do not apply. See Fiveash v. Holderness, infra,
and Ellis v. Allen, infra.
[2] Questions would remain under such analysis as to what extent these acts can be harmonized and effect given to the provisions of both, and therefore whether any initial or concurrent termination power is left in the mayor and council under these statutes.