John H. EBBING and Peggy O. Ebbing *v.*
STATE FARM FIRE & CASUALTY COMPANY

CA 98-1453 1 S.W.3d 459

Court of Appeals of Arkansas
Division III
Opinion delivered October 13, 1999

*Gill Law Firm*, by: *John P. Gill*, for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Beverly A. Rowlett* and *John E. Moore*, for appellee.

TERRY CRABTREE, Judge. This is an insurance contract case arising out of a homeowners insurance policy issued by appellee State Farm Fire and Casualty Company to appellants John and Peggy Ebbing insuring the Ebbing dwelling and its contents. The policy contained exclusions from coverage and limited coverage of the personal property to certain specified causes. After a Pulaski County jury found for State Farm, appellants brought this appeal alleging six issues: (1) as a matter of law, the flood or surface-water exclusion does not apply to bar recovery; (2) there is no substantial evidence to support a jury finding that a flood had occurred; (3) there is no evidence of governmental negligence; (4) the trial court should have directed a verdict because there was undisputed evidence that an explosion occurred; (5) appellants were prejudiced by the admission of evidence of a collateral-source payment to them by the Water Works;

and (6) the appellants were prejudiced by the failure to strike a biased prospective juror. We agree with the appellant that, as a matter of law, the flood or surface-water exclusion contained in the policy does not apply and reverse and remand for a new trial.

On November 22, 1996, the appellants were the owners of and residing at 6 Virginia Lane in Little Rock. The backyard of the house is adjacent to University Avenue. The Ebbings had insured the home and personal property with the appellee State Farm Fire and Casualty Company. Around midnight on November 22, 1996, a neighbor called the Ebbings and told them that there was water running out of their yard and they needed to check the house. The Ebbings left the residence when they discovered a great deal of water running into the back of the house. They later discovered that a water main on University had burst. Water ran through the house for an hour. The parties stipulated to the fact that the appellees suffered damage to the dwelling in the amount of $58,455.26, and to their personal property in the amount of $68,710. The total damage was $127,165.26.

The Ebbings reported the claim to State Farm. Maggie Wrinkler, an agent of State Farm went to the house and after looking at the house, told the Ebbings that the loss was not covered. The Ebbings made claim to the Water Works for the damage and were paid $103,000. Thereafter, the Ebbings brought suit against State Farm.

Before trial, the appellants moved *in limine* to prohibit the introduction of evidence that the Water Works had paid for part of the damage to the home and for personal property. The trial court denied the motion.

The homeowners policy issued by State Farm was subject to the following exclusion:

SECTION I — LOSSES NOT INSURED

(2) We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such

loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

(C) Water damage, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not. . . .

The appellant argues that the terms in the exclusion for water damage are ambiguous and must be interpreted against the insurance company. The appellee responds that the policy provisions are clear and unambiguous and that there is no need to resort to rules of construction. We agree that the terms are clear and unambiguous but do not agree that the terms exclude the damages suffered by the appellant.

We note that the insurance policy does not define the terms in dispute but that the terms, when considered in the context in which they are used and the other terms in the exclusion, relate to acts of nature and not events occurring as a result of a man-made structure. To interpret the terms in any other way would result in ambiguity rather than in its normal usage.

In Arkansas, the use of the term "surface water" has primarily been in the context of water accumulating as a result of rain or run-off. *See, e.g., Pirtle v. Opco, Inc.*, 269 Ark. 862, 601 S.W. 2d 265 (1980). Surface water does not have a definite bed, banks, or channel and is considered "surface drainage over the entire face of the tract of land occasioned by unusual freshets or other extraordinary causes." *Boyd v. Greene County, Ark.*, 7 Ark. App. 110, 112, 644 S.W.2d 615, 617 (1983)(quoting *Boone v. Wilson*, 125 Ark. 364, 188 S.W. 1160 (1916)). In the Arkansas cases reviewed, "extraordinary causes" are not those originating in

a water main. We find that the definition contained in *Black's Law Dictionary* is the commonly accepted usage of the term. It states:

> *Surface waters.* Those waters coming unto the ground and naturally spreading over the ground before they have formed into natural watercourses. As distinguished from the waters of a natural stream, lake, or pond, surface waters are such as diffuse themselves over the surface of the ground, following the defined course or channel, and not gathering into or forming any more definite body of water than a mere bog or marsh. They generally originate in rains and melting snows. . . . (Citations omitted.)

Therefore, the term "surface water" is that water accumulating from natural causes rather than water from a burst water main.

■■ The appellant asserts that the flood exclusion in the policy does not apply to water resulting from a burst water main. As a matter of law, the appellee responds that water from a burst water main is a flood. We agree that the term "flood" is unambiguous but that its common usage applies to water occasioned from natural events rather than a burst water main. The reasoning of the Colorado Court of Appeals in *Ferndale v. Great Am. Ins. Co.*, 34 Colo. App. 258, 527 P. 2d 939 (1974), is persuasive. In the *Ferndale* case, the court of appeals was required to determine if water damage from a burst water main was excluded under the water-damage exclusion in the insurance policy. The court stated that one of the leading commentators on insurance law has stated:

> "Flood waters" are those waters above the highest line of the ordinary flow of a stream, and generally speaking they have overflowed a river, stream, or natural water course and have formed a continuous body with the water flowing in the ordinary channel . . . 'surface water' is water which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such a diffused state, and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage. 5 *J. Appleman, Insurance Law and Practice* Section 3145.

The court went on to hold that "flood" and "surface water" do not include water from a burst water main. The reasoning of the Colorado Court of Appeals is sound and we adopt the definitions as applied to the exclusions in this policy. We find as a matter of law that the exclusions in the policy issued to the appellants do not include water from a burst water main.

■ For their second issue, the appellants argue that there is no substantial evidence in the record for the jury to find that a flood had occurred. We agree. As a matter of law, the exclusion for flood did not include water from a water main. When the appropriate definition of flood is applied to the facts of this case, there was no substantial evidence from which the jury could conclude that the damage to the residence was caused by a flood.

■ For their third issue, the appellants argue that the governmental exclusion contained in the policy does not apply. During a pretrial hearing on April 15, 1998, the following colloquy occurred between the court and the attorney for the appellee:

> THE COURT: But you would agree with me, wouldn't you, that this policy says that if it's not a flood, then this governmental action or inaction has no bearing.

> MR. MOORE: If it's not a flood or surface water caused from natural external forces, I would agree.

The policy provides:

> 3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:
>
>> b. Conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault; or
>>
>> c. Defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction or repair; or

(3) materials used in construction or repair; or

(4) maintenance;
 of any property (including land, structures, or improvements of any kind, whether on or off the residence premises.

However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section.

A plain reading of the policy is that the governmental-action-or-inaction exclusion of the policy is covered unless the resulting loss is not insured. We find that the governmental-action-or-inaction exclusion applies only if the loss is not insured and that, as previously stated, the flood or surface water exclusion does not apply; therefore, the exclusion for governmental action, inaction, or no action at all does not apply to exclude coverage.

■ ■ For appellant's fourth point on appeal, they argue that they were entitled to a directed verdict for damage to their personal property. Although the appellants moved for a directed verdict, the motion was a bare motion and did not specify a directed verdict in regard to the damage to their personal property. In order to preserve the issue of sufficiency of the evidence for appeal, the party moving for a directed verdict must state the specific ground upon which it seeks such relief. *Houston v. Knoedl*, 329 Ark. 91, 947 S.W.2d 745 (1997). The purpose of this requirement is to assure that the specific ground for a directed verdict is brought to the trial court's attention. *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). Thus, this point was not properly preserved for appeal. We will not address issues that are raised for the first time on appeal. *Meadors v. Meadors*, 58 Ark. App. 96, 946 S.W.2d 724 (1997).

The appellants argue for their fifth point on appeal that any evidence disclosing the nature of the relationship between the Ebbings and the Water Works is irrelevant, inflammatory, and inadmissible under the collateral-source rule. The appellants moved *in limine* for the exclusion of evidence of the payment by Water Works to the Ebbings and that motion was denied.

 The collateral-source rule prohibits the admissibility of evidence showing that the injured person received payments from another source, unless relevant for some purpose other than mitigation or reduction of damages. *Amos v. Stroud*, 252 Ark. 1100, 482 S.W.2d 592 (1972). There are limited exceptions to the rule such as to impeach a witness while testifying in a false or misleading way. *See Peters v. Pierce*, 314 Ark. 8, 858 S.W.2d 680 (1993). State Farm argued that it needed to introduce evidence of the collateral source of payment to impeach David Bowling, a Water Works witness; however, the collateral source of payment was never used to impeach the witness and was prejudicial to the appellants and is reversible error. *See Patton v. Williams*, 684 Ark. 187, 680 S.W. 2d 707 (1984).

 For their final point on appeal, the appellants argue that the trial court abused its discretion when it refused to strike a prospective juror. Actual or implied bias is sufficient ground for disqualification of a prospective juror. *Grammel v. State*, 259 Ark. 96, 531 S.W. 2d 474 (1976). During *voir dire*, one prospective juror notified the court that he would have a hard time setting aside his good friendship with a State Farm insurance agent and the fact that he was a customer of State Farm when reaching a verdict on the case at bar. Since we are reversing and remanding this case for retrial, it is unlikely that the same juror will be called, and therefore we do not address the issue.

Reversed and remanded.

JENNINGS and STROUD, JJ., agree.